1997-NMCA-066

943 P.2d 117

**Neal JOHNSON and Rosalind Johnson, husband and wife, Plaintiffs–Appellees,**

v.

**Bill WEAST, a law enforcement officer with the Pharmacy Board, Defendant–Appellant.**

No. 17005.

Court of Appeals of New Mexico.

May 20, 1997.

Certiorari Denied July 3, 1997.

---

Tom Udall, Attorney General, Joan M. Waters, Assistant Attorney General, Albuquerque, for Defendant–Appellant.

Phillip P. Baca, Kenneth R. Wagner & Associates, P.A., Albuquerque, for Plaintiffs–Appellees.

## OPINION

BOSSON, Judge.

1. Defendant Bill Weast appeals a jury verdict of $375,000 awarded for violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 (1994). Plaintiff contends Defendant was responsible for his wrongful arrest resulting in a violation of the Fourth Amendment right to be free from unreasonable search and seizure. We hold that Plaintiff neither stated nor proved a claim against Defendant for violation of rights secured to him by the Fourth Amendment. Accordingly, we reverse the verdict.

## BACKGROUND

2. Defendant was a drug inspector for the New Mexico Board of Pharmacy and a pharmacist. In September of 1988, Plaintiff, owner and registered pharmacist, called the Board of Pharmacy and spoke to Defendant requesting that the Board investigate what Plaintiff suspected were forged prescriptions. Over the next several months, Defendant reviewed Plaintiff's prescription records looking for forgeries. Plaintiff fully cooperated

with Defendant in the investigation. Defendant confirmed 150 forged prescriptions for the drugs Preludin, Dilaudid, and Percodan which he included in his report dated July 10, 1989. Defendant presented a number of photo arrays to Plaintiff who was able to identify thirteen individuals who had passed forged prescriptions. Defendant took this information to Assistant District Attorney Lally (the ADA). Because of the number of forged prescriptions, the ADA expressed some concern that Plaintiff might also be involved in criminal activity. The ADA asked Defendant for more information about Plaintiff's possible complicity in filling the forged prescriptions and requested a written report.

3. After further investigation, Defendant prepared a report containing all the information he had gathered, including each of the forged prescriptions, statements from doctors regarding the lack of authenticity of the prescriptions, and pricing information which showed that the price charged for the forged prescriptions was substantially higher than the market price, thereby indicating a possible motive for Plaintiff's involvement in a criminal scheme. The report observed in several instances that Plaintiff had filled prescriptions for both Preludin and Dilaudid for the same patient, and further noted that Defendant, as an experienced pharmacist, had never seen these drugs prescribed together for the same individual. The report named Plaintiff as a target of an investigation and concluded that the case remain "open pending further investigation"; it did not charge Plaintiff with any crime or violation, nor did it request an arrest or indictment.

4. Defendant's report was drafted on a standard Pharmacy Board form entitled "Investigation Report." The report identified Plaintiff as subject of the investigation and Defendant as complainant and author of the report. Although under state law Defendant had the power to make an arrest, he made no effort to place Plaintiff under arrest or file a criminal complaint against him. See NMSA 1978, § 61–11–6(N) (Repl.Pamp.1996) (inspectors for Board of Pharmacy shall be pharmacists and have all the powers and duties of peace officers). Defendant was acting in his capacity as an inspector when his report was turned over to the ADA who then used the information to obtain a grand jury indictment against Plaintiff. Defendant was called to testify before the grand jury, which subsequently indicted Plaintiff on a number of drug-related charges. Based on the indictment Plaintiff was arrested. All charges against Plaintiff were later dismissed after a district court suppressed evidence obtained during the investigation.

5. Plaintiff then filed suit against Defendant and the ADA under 42 U.S.C. § 1983, the federal Civil Rights Act, alleging in part unlawful arrest, unlawful search and seizure, and violation of procedural due process. The claims against the ADA were dismissed by the district court on grounds of prosecutorial immunity, and this Court affirmed that dismissal. *See Johnson v. Lally*, 118 N.M. 795, 801–02, 887 P.2d 1262, 1268–69 (Ct.App. 1994). Plaintiff proceeded against Defendant alone.

6. Before trial, all counts against Defendant were dismissed with prejudice except the claim of unlawful seizure, which alleged that Defendant had caused Plaintiff to be seized unreasonably in violation of his rights under the Fourth Amendment. As indicated by the jury instructions, Plaintiff had two theories for this claim: (1) that Defendant initiated criminal proceedings without probable cause against Plaintiff for unlawfully filling forged prescriptions, and (2) that Defendant made statements to the grand jury with reckless disregard for the truth or omitted facts critical to a finding of probable cause which caused Plaintiff to be arrested without probable cause. The jury determined in a special verdict that Defendant did not have probable cause to initiate criminal proceedings against Plaintiff and therefore found for Plaintiff. The jury found for Defendant on the second theory when it determined that Defendant had not made false statements to, or omitted material facts from, the grand jury.

## DISCUSSION

7. We are concerned on this appeal with only the first basis for Plaintiff's claim. Plaintiff presented his case to the jury on the

theory that Defendant "wrongfully caused" Plaintiff's arrest by: (1) wrongfully initiating criminal proceedings without probable cause, (2) which, in turn, resulted in a grand jury indictment, and (3) which then led to his unreasonable seizure upon arrest. The legal question we must resolve is whether submitting an investigatory report in this manner, and with these consequences, violated any of Plaintiff's rights under the Fourth Amendment.

8. "The first inquiry in any Section 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). The precise theory of Plaintiff's case, how he was "deprived of a right secured by the Constitution," is not clear. In his briefs and at oral argument before this Court, Plaintiff relied on legal authorities which discuss a Section 1983 claim based on an unconstitutional arrest without probable cause. However, Defendant made no arrest of Plaintiff at any time. On the other hand, the facts of this case together with the jury instructions suggest a constitutional claim for malicious prosecution, although that does not appear to have been the theory presented to the jury. We examine both theories and conclude that under either theory Plaintiff did not prove a violation of a constitutional right to give rise to liability under Section 1983 on the part of Defendant.

### Unconstitutional Arrest

9. Plaintiff relies heavily on *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), in which the United States Supreme Court held that a police officer could be sued under Section 1983 for a violation of the Fourth Amendment unless the officer had an objectively reasonable belief that his affidavit in support of an arrest warrant was sufficient to establish probable cause. *Malley,* 475 U.S. at 344, 106 S.Ct. at 1097. The Supreme Court declined to grant the officer absolute immunity, even though a magistrate had made an independent determination that probable cause existed to issue the warrant. *Id.* Plaintiff draws an analogy between the police officer in *Malley* submitting an affidavit to a magistrate and Defendant submitting his report to the ADA; following this analysis Plaintiff would require Defendant to have probable cause in the same manner as the officer in *Malley.*

10. We do not find the analogy persuasive. The police officer is actively seeking an arrest which must be supported by probable cause. Whether the officer arrests the suspect on the spot, or proceeds through the process of securing an arrest warrant, an officer is held to the standard of probable cause. An inspector, on the other hand, is not making or soliciting an arrest; he is investigating and reporting, perhaps with a recommendation, to some other official whose role is to decide whether sufficient probable cause exists to pursue a warrant and support an arrest.

11. Nothing in *Malley* places a duty upon Defendant to satisfy a standard of probable cause with respect to this report. Such a duty might arise if Defendant had arrested Plaintiff pursuant to Section 61–11–6(N) or had taken his report to a magistrate, filled out an affidavit based upon the report, secured an arrest warrant, and then arrested Defendant or caused his arrest by others. If Defendant had misrepresented information to, or withheld evidence from, the district attorney or the grand jury in an effort to obtain an indictment, and if that information would have altered the probable cause determination, that action could have subjected Plaintiff to a "seizure" without probable cause which would therefore be unreasonable within the meaning of the Fourth Amendment. *See Wolford v. Lasater,* 78 F.3d 484, 489 (10th Cir.1996); *Hand v. Gary,* 838 F.2d 1420, 1427–28 (5th Cir.1988); *Smiddy v. Varney,* 665 F.2d 261, 266–67 (9th Cir.1981). But once Plaintiff lost that part of his claim before the jury, he fell outside the only persuasive analogy to *Malley.*

12. Plaintiff also relies, to no avail, on *Arnott v. Mataya,* 995 F.2d 121, 124 n. 4 (8th Cir.1993) and *Mitchell v. City of Hartford,* 674 F.Supp. 60, 64 n. 4 (D.Conn.1986), which were Section 1983 false arrest cases holding that a subsequent grand jury determination of probable cause did not shield officers from

liability for any initial actions undertaken without probable cause. However, the distinguishing feature in both cases is that grand jury action was preceded by an initial unlawful arrest and not just an investigative report. We are not aware of any Section 1983 false arrest case in which the defendant did not actually arrest the plaintiff, or obtain the warrant, or at the very least participate as a co-conspirator in the arrest. *See Mitchell,* 674 F.Supp. at 67.

13. We fail to see how an inspector can be held to a standard of probable cause to submit a report. At that point the inspector is simply gathering information which may lead to probable cause, a determination to be made by someone else, such as the police, the prosecutor, or the grand jury. We are wary of inhibiting an inspector from reporting results to the police or a prosecuting attorney. We would turn the process on its head if we were to require probable cause at the beginning of an investigative process instead of where it counts—at the point of "seizure" ·under the Fourth Amendment.

■ 14. Although there is not much case law on point, the little that exists supports Defendant on this issue. There is no constitutional right to have an investigation completed thoroughly, or be based on probable cause, before the results are given to the authorities. *See Kompare v. Stein,* 801 F.2d 883, 890 (7th Cir.1986); *see also Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1248 (7th Cir. 1994) (paramedics responding to emergency situation did not need probable cause to believe crime had been committed before calling police for assistance); *Rodriguez v. Ritchey,* 556 F.2d 1185, 1193 (5th Cir.1977) ("[T]he general rule is that one who is engaged merely in investigatory work is not liable for a resulting false arrest, even if he acted maliciously."). In *Kompare,* a medical examiner's· report on the cause of death of a child formed part of the basis of an indictment for voluntary manslaughter against the mother. *Kompare,* 801 F.2d at 885. Before trial, tissue tests were completed which showed that a medical abnormality might have contributed to the child's death. *Id.* at 886. The mother was acquitted and then sued the medical examiner under Section 1983. *Id.* The claim against the medical examiner was dismissed by the court which held that the conduct of the examiner, that she allegedly failed to investigate the child's death thoroughly and failed to reveal exculpatory information, did not violate clearly established constitutional rights. *Id.* at 890–91.

15. The medical examiner in *Kompare* is similar to Defendant in the case before us. Defendant compiled the results of his investigation and turned them over to the ADA. Defendant was not under a constitutional duty to develop exculpatory information.

■ 16. Recognizing that Defendant did not actually arrest him in the case at bar, Plaintiff framed the instruction to the jury that Defendant would be liable if he "initiate[d] criminal proceedings against Plaintiff Neal Johnson for unlawfully filling forged prescriptions" without probable cause. The question is whether Defendant in fact initiated criminal proceedings, and if so whether that would have authorized a judgment under Section 1983. We think not for several reasons to be discussed in the remainder of the opinion.

17. It is clear that Defendant did not "initiate criminal proceedings." He submitted an investigative report at the request of the ADA which was then used as the basis for grand jury proceedings. In response, Plaintiff makes much of the fact that this report contained the language "Complaint against Bill Johnson" as part of the printed Pharmacy Board form. It is clear, however, that the document, whatever its language, did not rise to the level of a criminal complaint within the meaning of the Rules of Criminal Procedure. Article 2 of those rules, entitled "Initiation of Proceedings," requires the following to commence a prosecution: "a sworn written statement of the facts, the common name of the offense and, if applicable, a specific section number of New Mexico Statutes which defines the offense." NMRA 1997, 5–201(B); *see also* NMRA 1997, 9–201. The report simply set out in great detail the frequency and number of controlled substances under forged prescriptions, pricing information and statements from doctors verifying the forgeries. As a matter of state

law, this document did not and could not initiate criminal proceedings. *See State v. Raley,* 86 N.M. 190, 192, 521 P.2d 1031, 1033 (Ct.App.1974). *Cf. Sanchez v. Attorney General,* 93 N.M. 210, 213, 598 P.2d 1170, 1173 (Ct.App.1979) (when no complaint, information, or indictment had been filed against defendant, no criminal prosecution had been commenced).

### Unconstitutional Malicious Prosecution

18. Even if the report had initiated criminal proceedings, that alone would not form the basis of a claim under 42 U.S.C. § 1983. When an arrest results from false and malicious allegations, even with a valid warrant, the claim more closely resembles malicious prosecution. *Calero–Colon v. Betancourt–Lebron,* 68 F.3d 1, 4 (1st Cir.1995). *See Rodriguez,* 556 F.2d at 1193; *Zamora v. Creamland Dairies, Inc.,* 106 N.M. 628, 632, 747 P.2d 923, 927 (Ct.App.1987); 1 Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation* § 3.15 (3d ed. 1991). A federal civil rights claim under Section 1983 for violation of Fourth Amendment rights can be based on the tort of malicious prosecution. *See Heck v. Humphrey,* 512 U.S. 477, 484, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994). We therefore begin with an examination of the common law tort of malicious prosecution, *see Wolford* 78 F.3d at 489, and evaluate Plaintiff's case against that backdrop. *See Taylor v. Meacham,* 82 F.3d 1556, 1561 (10th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 186, 136 L.Ed.2d 125 (1996); *Hand,* 838 F.2d at 1426–27; *see also* Nahmod, *supra,* § 3.15.

19. In New Mexico, "to state a claim for malicious prosecution, a plaintiff must prove that: (1) defendant initiated, or procured the institution of, criminal proceedings against plaintiff without probable cause; (2) the proceedings were initiated primarily for a purpose other than that of bringing an offender to justice; and (3) the proceedings have terminated in favor of the accused." *Zamora,* 106 N.M. at 632, 747 P.2d at 927. As to the theory on which the jury found for Plaintiff, the jury was instructed that Plaintiff based his claim on the initiation of criminal proceedings without probable cause. The jury was asked to answer by special interrogatory the following question: "Did the Defendant Bill Weast have probable cause to initiate criminal proceedings against Plaintiff Neal Johnson for unlawfully filling forged prescriptions?"

20. We have already stated why submitting the investigative report did not initiate criminal proceedings as a matter of New Mexico law. More importantly, the special interrogatories and the accompanying instructions omit any reference to malice, bad faith, or any other ulterior motive which is a cornerstone of malicious prosecution. The issue simply never went to the jury in the context of Plaintiff's claim for initiation of criminal proceedings without probable cause. Because the jury found for Defendant, not for Plaintiff, on the allegation of misrepresentations and omissions before the grand jury, those allegations can form no part of an argument for affirmance here. Furthermore, merely providing information that is not false to the authorities does not initiate proceedings so as to give rise to a malicious prosecution claim, if the decision to proceed is left to the discretion of another person such as the prosecutor and the absence of falsity allows the prosecutor to exercise independent judgment. *Zamora,* 106 N.M. at 632–33, 747 P.2d at 927–28; *see Senra v. Cunningham,* 9 F.3d 168, 174 (1st Cir.1993); *Hand,* 838 F.2d at 1427. *See generally* Restatement (Second) of Torts § 653 cmt. d, cmt. g (1977); W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 119, at 872–73 (5th ed. 1984). According to the ADA, he would not have proceeded without Defendant's report. However, there was no testimony that the ADA was influenced or pressured by Defendant, or deceived by misrepresentation, into bringing an indictment. *See Taylor,* 82 F.3d at 1562–64; *Smiddy v. Varney,* 803 F.2d 1469, 1471–72 (9th Cir. 1986) (discussing rebuttable presumption that prosecutor makes independent determination of probable cause, and absent evidence of undue pressure or deceit by police, cuts off officer liability for harm suffered after prosecution begins). Thus, we cannot say whether Plaintiff could have sustained a Section 1983 claim for malicious prosecution against Defendant under these facts, even if

such a claim had been clearly presented to the jury.

21. Plaintiff's theory of recovery together with the facts found by the jury at trial do not fit any cognizable civil rights claim under Section 1983. Plaintiff states a solid theory of unconstitutional arrest without probable cause, but the theory is not borne out by what actually happened. All Defendant did was submit a report that was not shown to be false and, as a matter of law, that did not give rise to an arrest without probable cause. On the other hand, wrongfully initiating criminal proceedings without probable cause and with an improper motive may, under certain circumstances, constitute malicious prosecution under Section 1983. However, the jury was not clearly instructed on this theory, and even if the instructions may have supported it, the jury found against Plaintiff on an essential element of the theory when it found that Defendant did not engage in deception.

## CONCLUSION

22. Essentially, this case as presented to the jury fell somewhere in between unconstitutional arrest and unconstitutional malicious prosecution; it failed to satisfy either theory or to establish the deprivation of a right secured to Plaintiff under the Constitution of the United States. Accordingly, the judgment on the verdict based on 42 U.S.C. § 1983 must be reversed and the case remanded with instructions to enter judgment for Defendant.

23. IT IS SO ORDERED.

ALARID and PICKARD, JJ., concur.