2003-NMSC-002

61 P.3d 823

**WESTSTAR MORTGAGE CORPORATION, a New Mexico corporation, Plaintiff–Petitioner/Counter–Defendant,**

v.

**Ken JACKSON, Defendant–Respondent/Counter–Plaintiff.**

**No. 27,270.**

Supreme Court of New Mexico.

Dec. 23, 2002.

Miller, Stratvert & Torgerson, P.A., Alice Tomlinson Lorenz, James J. Widland, Albuquerque, NM, for Petitioner.

Joseph P. Kennedy, Albuquerque, NM, for Respondent.

## OPINION

FRANCHINI, Justice.

{1} Plaintiff Weststar Mortgage Corporation (Weststar) appeals from a jury verdict granting compensatory and punitive damages to Defendant Ken Jackson (Jackson). Weststar, seeking to recover money from Jackson that belonged to Weststar, had filed an action against Jackson for unjust enrichment, fraud, constructive fraud, conversion, and promissory estoppel. In response, Jackson filed a counterclaim alleging malicious abuse of process. The trial court granted partial summary judgment for Weststar on the unjust enrichment claim and ordered Jackson to repay the money in question with interest. However, the trial court did not rule on Weststar's motion for summary judgment on the counterclaim. It was subsequently tried before a jury which awarded Jackson $50,000 in compensatory damages and $150,000 in punitive damages; the trial court declined to award post-judgment interest on the punitive damages. Post-trial, the trial court denied Weststar's motion for judgment as a matter of law, or, in the alternative, a new trial. Weststar appealed the judgment to the Court of Appeals, and Jackson filed a cross appeal challenging the denial of interest. In a divided opinion, the Court of Appeals affirmed the judgment against Weststar and reversed the trial court's denial of post-judgment interest on the punitive damages. *Weststar Mortgage Corp. v. Jackson,* 2002–NMCA–009, 131 N.M. 493, 39 P.3d 710, *cert. granted,* 131 N.M. 564, 40 P.3d 1008, No. 27,270 (2002). We granted Weststar's petition to this Court to issue a writ of certiorari to the Court of Appeals

under NMSA 1978, § 34–5–14(B) (1972). We reverse the Court of Appeals and the judgment in favor of Jackson.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Weststar is an escrow company that provides services on escrow accounts, loans, and mortgages by holding real estate contracts, collecting payments, and disbursing proceeds. The corporation also purchases real estate contracts. In April 1998, Weststar purchased a real estate contract from Jackson, for whom they had been providing mortgage services. At that time, Jackson signed a closing statement with Weststar, and he received a copy of the closing statement. There is no dispute that the balance due to Jackson for his equity in the property was $2786.82. But, on May 1, 1998, Norwest Bank mistakenly deposited the entire amount of the sales proceeds into Jackson's account, including $12,927.26 due to Weststar. Jackson testified that when he learned that more than $15,000 had been deposited into his account, he knew that someone had made a mistake. He called Weststar to inquire whether the money transfer had been completed, but did not tell them about the excess funds in his account. On May 14, Jackson removed $12,000 from the account to purchase a certificate of deposit (CD). By July 5, 1998, Weststar was aware of the error, and the employee who had handled the purchase of the real estate contract, Ms. Lynch, contacted Jackson. The first time they spoke, Jackson acted as though he did not understand what she was talking about. During the second call, he acknowledged that he had received the additional funds. Jackson told her about having used $12,000 of the funds to purchase the CD and that he did not have the remaining $972.26. He agreed to repay the $12,000 in August when the CD matured. In the meantime, Weststar, concerned that Jackson had kept the money for two months without notifying them and that his offer to repay the money was not in writing, sent a demand letter to Jackson on August 7 requesting payment of their money within thirty days. The letter also stated that, if necessary, Weststar would pursue legal remedies, including a civil lawsuit, to recover their funds. In response to the letter, Jackson and his wife met with his first attorney who told them that the mistaken transfer of funds to their account was Weststar's loss and their gain. He advised them that the money was theirs to keep and that Jackson could not be arrested for keeping the money.

{3} When Ms. Lynch contacted Jackson in August to arrange for the repayment that they had discussed earlier, he told her that she would now have to speak with his attorney. When Ms. Lynch reported this information to Weststar, a senior vice-president, Mr. Inman, called Jackson's attorney to clarify Jackson's intent. The attorney responded that he and his client considered the mistaken transfer of funds to have been a "golden opportunity" and laughed at the question when Mr. Inman asked about repayment. When Jackson's attorney did respond to Weststar's letter in mid-September, he stated that Jackson no longer had the full amount of $12,927.26, and offered to repay $3000 of the amount due to settle the matter in full. Mr. Inman testified that at this point he believed the money was gone and contacted the Carlsbad police to determine whether a criminal act had been committed. After that conversation, Ms. Lynch met with Detective Sergeant Boutelle of the Carlsbad Police Department on September 23, 1998, and took the documents involved with the contract purchase for his review. She testified that Weststar's purpose in going to the police was to determine whether a crime had been committed and to make a record of the occurrence. The detective explained to her that all he could do was prosecute any criminal wrongdoing and that he was not a collection agent. She stated that she understood and that Weststar's attorneys were preparing to begin civil proceedings for that purpose. Detective Boutelle responded that even if Jackson paid the money back, it would not change his pursuit of the criminal case. During this meeting with Ms. Lynch, the detective called Jackson's attorney to advise him that Weststar had contacted the police about the actions of his client. The detective testified that the attorney had responded that he thought it was a civil matter. The detective disagreed with him and sug-

gested that the attorney should talk to his client about returning the money. The attorney laughed at him. During his investigation, Detective Boutelle contacted Jackson to tell him that the police were investigating Weststar's complaint. The detective also informed Jackson that he thought his attorney had given him bad advice with regard to his keeping Weststar's money. He suggested that, if Jackson felt he was entitled to keep the money, he should return it to Weststar and then file a civil action to recover the funds. A similar suggestion to Jackson's first attorney was also rebuffed.

{4} Detective Boutelle testified that he completed his investigation and gave it to an assistant district attorney for review. Upon determining that probable cause existed, the assistant district attorney issued a criminal complaint. The complaint was taken to a magistrate judge for approval, and an arrest warrant was issued for Jackson. After a preliminary hearing in December 1998 before a presiding magistrate judge, Jackson, who was then represented by his current attorney, was bound over for trial in district court. The assistant district attorney later dismissed the criminal charges when Norwest Bank failed to supply in a timely manner documentation that he would need to prosecute the case.

## II. DISCUSSION

{5} In his counterclaim, Jackson alleged that Weststar initiated criminal proceedings against him for an improper purpose and without probable cause. He also claimed that their actions were intentional, willful, and in reckless disregard of his rights. Weststar maintains that the trial court erred when it refused to dismiss the counterclaim for malicious abuse of process, arguing that the evidence presented by Jackson was legally insufficient to sustain the counterclaim. Weststar first raised the issue in a motion for summary judgment. Weststar's argument was continued in motions for a directed verdict after the close of evidence by Jackson and at the close of trial, in a motion for judgment as a matter of law, and in a motion for a new trial. The trial court denied all the motions.

{6} Both parties rely upon *DeVaney v. Thriftway Marketing Corp.*, 1998–NMSC–001, 124 N.M. 512, 953 P.2d 277, to support their respective arguments. In that case, this Court reviewed the purposes and elements of the two torts of abuse of process and malicious prosecution. *Id.* ¶¶ 13–16. We concluded these torts would no longer be separate causes of actions and restated their elements into a single tort to be known as malicious abuse of process. *Id.* ¶ 12. The elements of this cause of action were defined as follows:

(1) the initiation of judicial proceedings against the plaintiff by the defendant;

(2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim;

(3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and

(4) damages.

*Id.* ¶ 17. This Court noted that these causes of action involve a balance between "the interest in protecting litigants' right of access to the courts and the interest in protecting citizens from unfounded or illegitimate applications of the power of the state through the misuse of the courts." *Id.* ¶ 14. In restating the torts as a single cause of action, we observed that they shared a common purpose of protecting "a plaintiff who has been made the subject of legal process improperly, where the action was wrongfully brought by a defendant merely for the purpose of vexing or injuring the plaintiff, and resulting in damage to his or her personal rights." *Id.* The two torts also served "to protect the important interest of access to the courts, thereby preventing any chilling effect on the legitimate use of process." *Id.* ¶ 18. Because "[m]eaningful access to the courts is a right of fundamental importance in our system of justice," the tort of malicious abuse of process is to be construed narrowly to protect the right of access. *Id.* ¶ 19.

{7} On appeal, Weststar argues that the trial court erred in the following manner: (1) by submitting Jackson's counterclaim to the jury because Weststar did not initiate criminal proceedings against Jackson as that term

is used in malicious abuse of process claims; (2) by failing to determine, as a matter of law, the question of whether Weststar had probable cause to believe that Jackson acted wrongfully; (3) by misunderstanding the element of misuse of process; (4) by finding that Weststar had an improper motive; (5) by submitting an incorrect instruction on malicious abuse of process to the jury; and (6) by allowing the question of punitive damages to go to the jury. Weststar also contends that Jackson's claim was precluded as a matter of law by the fact that he was guilty of a criminal offense and that the Court of Appeals erred when it reversed the trial court and awarded post-judgment interest on the punitive damages.

{8} We treat Weststar's argument as challenging the sufficiency of the evidence upon which the jury based its verdict. *See Gonzales v. N.M. Dep't of Health,* 2000–NMSC–029, ¶ 18, 129 N.M. 586, 11 P.3d 550. If the verdict below is supported by substantial evidence, which we have defined as "such relevant evidence that a reasonable mind would find adequate to support a conclusion," we will affirm the result. *Landavazo v. Sanchez,* 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). In assessing whether the evidence is sufficient as a matter of law to justify the jury's verdict, we review all evidence in the light most favorable to the verdict and resolve all conflicts in the light most favorable to the prevailing party. *Smith v. FDC Corp.,* 109 N.M. 514, 519, 787 P.2d 433, 438 (1990). We examine the record for "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoted authority and quotation marks omitted). It is not the task of a reviewing court to sit as a trier of fact or to reweigh the evidence. *Id.* After reviewing the record, we are persuaded that, as a matter of law, the evidence presented in this case was insufficient to satisfy any of the elements of the tort. A reasonable jury could not have de-

termined that Weststar's actions in this matter constituted a malicious abuse of process; therefore, the trial court erred in submitting this case to the jury. Given the apparent confusion of the *Weststar* majority in dealing with the tort of malicious abuse of process and the law of agency, we address each of the elements to reaffirm the *DeVaney* analysis and holding. Because we reverse based on the lack of substantial evidence on the malicious abuse of process claim, we do not address Weststar's remaining claims.

## A. Initiation of Proceedings.

{9} Weststar argues that the first element of initiation of proceedings was not established by Jackson. Jackson responds that Weststar "made the call to prosecute" and then controlled and maintained that prosecution.[1] In a claim for malicious abuse of process, the plaintiff has the burden of proving that the defendant initiated judicial proceedings against him or her. *DeVaney,* 1998–NMSC–001, ¶¶ 17–18, 124 N.M. 512, 953 P.2d 277.

{10} Weststar responds that merely providing the authorities with accurate information does not initiate proceedings when the decision to prosecute is left to the discretion of another. The company argues that its participation in the criminal prosecution was to report truthfully about the actions of Jackson to the authorities. Weststar maintains that Detective Boutelle then conducted his own investigation in the matter and consulted with the district attorney's office as to whether to pursue a criminal action against Jackson. In making this argument, Weststar relies upon *Johnson v. Weast,* 1997–NMCA–066, ¶ 20, 123 N.M. 470, 943 P.2d 117. In *Johnson,* the plaintiff had filed a civil rights suit against the defendant under 42 U.S.C. ¶ 1983. *See* Dan B. Dobbs, *The Law of Torts* § 430, at 1216 (2000) [hereinafter Dobbs] (recognizing that a civil rights action parallels the tort of malicious prosecu-

---

1. In support of this assertion, Jackson claims that Detective Boutelle testified that Weststar could have "called him off." A review of the transcript reveals that the detective did not make that statement. In this passage of his testimony, he is discussing the role of the district attorney's office in determining whether a case should go

forward. Although this opinion will not address every instance of misattribution, we remind appellate counsel of his duty of candor toward this Court. Rule 16–303 NMRA 2002 ("A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal.").

tion and that claims are "treated in a quite similar manner"). The plaintiff alleged that the defendant was responsible for the plaintiff's wrongful arrest because he had initiated criminal proceedings against the plaintiff without probable cause. *Johnson*, 1997–NMCA–066, ¶¶ 5, 6, 123 N.M. 470, 943 P.2d 117. The jury found for the plaintiff, the defendant appealed, and the Court of Appeals reversed. *Id.* ¶ 1. The basis of the plaintiff's claim was that the defendant had submitted an investigative report to an assistant district attorney. The district attorney had then used the report as the basis for the grand jury proceedings that resulted in the plaintiff's indictment. *Id.* ¶ 17. The Court held that, as a matter of law, the report did not initiate criminal proceedings. *Id.* In resolving the claim, the Court of Appeals stated the following:

> [M]erely providing information that is not false to the authorities does not initiate proceedings so as to give rise to a malicious prosecution claim, if the decision to proceed is left to the discretion of another person such as the prosecutor and the absence of falsity allows the prosecutor to exercise independent judgment.

*Id.* ¶ 20 (relying upon *Zamora v. Creamland Dairies, Inc.*, 106 N.M. 628, 632–33, 747 P.2d 923, 927–28 (Ct.App.1987)); *see also* Restatement (Second) of Torts § 653 cmt. d, cmt. g (1977).

{11} We are in agreement with this principle. In *Hughes v. Van Bruggen*, 44 N.M. 534, 539, 105 P.2d 494, 497 (1940), this Court cited with approval the following language from the same section of the Restatement, "[t]he exercise of the officer's discretion makes the initiation of the prosecution his [or her] own and protects from liability the person whose information or accusation has led the officer to initiate proceedings." *See* Dobbs, *supra*, § 431, at 1217 ("[T]he defendant can be regarded as an instigator of the proceeding only if (a) he [or she] communicates material information falsely or inaccurately and the prosecutor relies upon his [or her] statement [2], or (b) the defendant uses his [or her] power or position to influence the prosecutor in favor of prosecution.").

{12} Jackson presented no evidence that Weststar placed any pressure on the authorities to pursue the matter. The undisputed evidence of the two Weststar employees was that their involvement with the criminal proceedings consisted of reporting to the authorities about their dealings with Jackson and then agreeing to cooperate with any prosecution. *See Hughes*, 44 N.M. at 538–539, 105 P.2d at 497 ("In order to charge a private person with responsibility for the initiating of proceedings by a public official, it must therefore appear that his [or her] desire to have the proceedings initiated expressed by direction, request, or pressure of any kind was the determining factor in the official's decision to commence the prosecution. . . ."). Weststar would not have agreed to cooperate in the criminal proceedings except for Jackson's refusal to return the amount due, and the detective testified that he would typically not have pursued an investigation in a case like this unless the complaining witness agreed to cooperate in the investigation and to testify at trial. However, these circumstances are not sufficient as a matter of law to establish that Weststar initiated the criminal proceedings against Jackson. *See Johnson*, 1997–NMCA–066, ¶ 20, 123 N.M. 470, 943 P.2d 117 (recognizing that, although the assistant district attorney would not have proceeded without the defendant's investigative report, "there was no testimony that the ADA was influenced or pressured by [the defendant], or deceived by misrepresentation, into bringing an indictment").

{13} Detective Boutelle testified that he conducted his own investigation and conclud-

---

2. The *Weststar* majority concluded that "a jury could infer Weststar provided Boutelle with misleading information." 2002–NMCA–09, ¶ 23. Jackson did not introduce evidence of Inman's statement to Boutelle regarding the purpose of the CD, so we do not rely on this information and conclude that the Court of Appeals ought not to have done so. *See Campos Enters., Inc. v. Edwin K. Williams & Co.*, 1998–NMCA–131, ¶ 12, 125 N.M. 691, 964 P.2d 855 ("As a court of review, we cannot review . . . allegations which were not before the district court."). Moreover, we believe that the evidence relied upon by the Court of Appeals does not support a reasonable inference that Weststar misled Boutelle. *Andrus v. Gas Co. of N.M.*, 110 N.M. 593, 596, 798 P.2d 194, 197 (Ct.App.1990) ("A reasonable inference cannot be based on supposition or conjecture.").

ed that there was probable cause to believe that a crime had been committed. He then took the results to an assistant district attorney for approval. After reviewing the investigation, the district attorney approved a criminal complaint for larceny against Jackson. The complaint was based on Boutelle's independent investigation, not on the information supplied by the Weststar employees. The independent exercise of prosecutorial discretion establishes as a matter of law that Weststar did not initiate the prosecution. *See Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion."); Dobbs, *supra,* § 431, at 1217 ("If the officer or prosecutor makes his [or her] own decision to prosecute, it is he [or she], not the complaining witness, who is regarded as instituting the action."). The independent exercise of prosecutorial discretion establishes that Weststar did not initiate the prosecution. *See* Restatement (Second) of Torts § 653 cmt. g.

{14} We note that, in resolving this issue, the *Weststar* majority concluded, "A complainant who persuades, requests, directs, or pressures prosecuting authorities to proceed with a prosecution can be regarded in proper circumstances as initiating the prosecution and be held liable for it." *Weststar,* 2002–NMCA–009, ¶ 25, 131 N.M. 493, 39 P.3d 710. We disapprove of this statement and consider it to be an overly broad interpretation of this element of malicious abuse of process which could create a serious risk of chilling the reporting of crime. *See DeVaney,* 1998–NMSC–001, ¶ 19, 124 N.M. 512, 953 P.2d 277 (recognizing that the tort of malicious abuse of process must be construed narrowly "to protect the right of access to the courts"). This statement fails to recognize the public policy articulated in *DeVaney* and ignores the need for exercising caution in reviewing malicious abuse of process actions. Moreover, citizens must have "wide latitude in reporting facts to authorities so as not to discourage the exposure of crime." *Zamora,*

106 N.M. at 634, 747 P.2d at 929. "Efficient law enforcement requires that a private person who aids the police by giving honest, even if mistaken, information about crime, should be given effective protection from civil liability." *Id.*

### B. Misuse of Process.

{15} An improper act constituting a misuse of process is the second essential element of the tort of malicious abuse of process. *DeVaney,* 1998–NMSC–001, ¶ 17, 124 N.M. 512, 953 P.2d 277. A misuse of process may be established by showing either a lack of probable cause or a procedural impropriety. *Id.* ¶¶ 22, 28. "Under this new tort, there must be a misuse of process by the defendant beyond the mere initiation of proceedings against the plaintiff." *Id.* ¶ 53. "The requirement of a misuse of process, in addition to the mere initiation of proceedings, serves to prevent a chilling effect on claims well-founded in fact and law and asserted for the legitimate purpose of redressing a grievance." *Id.* ¶ 21. The *Weststar* majority found both a lack of probable cause and a misuse of process. *Weststar,* 2002–NMCA–009, ¶ 39, 131 N.M. 493, 39 P.3d 710. We disagree with both determinations.

### 1. Lack of Probable Cause.

{16} In *DeVaney,* this Court stated that to demonstrate the improper act required in an action for malicious abuse of process, the "plaintiff may show the defendant filed an action against that plaintiff without probable cause. For this purpose, we define probable cause as the reasonable belief, founded on known facts established after a reasonable pre-filing investigation, that a claim can be established to the satisfaction of a court or jury." *Id.* ¶ 22 (internal citation omitted). "Probable cause—the reasonableness of inferences of guilt—is to be judged by facts as they appeared at the time, not by later-discovered facts." Dobbs, *supra,* § 432, at 1220; *accord* Restatement (Second) of Torts § 662 cmt. e (stating that an accusation leading to the initiation of a criminal prosecution must be based on probable cause determined as of the time the

action was filed). The lack of probable cause must be manifest. *DeVaney,* 1998–NMSC–001, ¶ 22, 124 N.M. 512, 953 P.2d 277.

{17} Weststar argues that the trial court erred when it submitted the question of probable cause to the jury rather than deciding the issue itself as a matter of law. We agree. "[T]he existence of probable cause in the underlying proceeding, that is, whether the facts amount to probable cause, is a question of law" and "shall be decided by the trial judge." *DeVaney,* 1998–NMSC–001, ¶¶ 24, 41, 124 N.M. 512, 953 P.2d 277; *accord* Restatement (Second) of Torts, §§ 673, 681B. The *Weststar* majority concluded that the relevant facts were in dispute and, therefore, the question of probable cause was properly determined by the jury. *Weststar,* 2002–NMCA–009, ¶ 29, 131 N.M. 493, 39 P.3d 710. In reaching that determination, the Court of Appeals relied in part on the following statement in *DeVaney,* 1998–NMSC–001, ¶ 41, 124 N.M. 512, 953 P.2d 277. "[T]he circumstances surrounding the filing of the complaint, if in dispute, must be resolved by a fact-finder." We disagree for two reasons. First, in this case, the essential facts on which the issue of probable cause turns—what Weststar knew at the time it went to the police—are not in dispute. Second, the Court of Appeals misapprehended the meaning of the language in *DeVaney.* When the relevant facts are disputed, the role of the jury is to determine the disputed facts bearing on the probable cause question, that is, "the circumstances surrounding the filing of the complaint." Whether those facts constitute probable cause remains a matter for the trial court to determine. *See* Dobbs, *supra,* § 432, at 1222–23. The trial court erred in submitting this legal determination to the jury. Furthermore, there was no evidence to dispute probable cause, and the trial court should have directed a verdict for the defendant and determined that probable cause was established as a matter of law.

{18} The trial court and the Court of Appeals therefore erred in concluding that Weststar lacked probable cause to proceed against Jackson. The record reflects that Weststar had a reasonable belief, founded on known facts, that they had a legal claim against Jackson. The company was faced with an individual who was aware that there was some $13,000 in his account that did not belong there. Not only did he know that the money did not belong to him, he also knew that it belonged to Weststar and how to contact them. Yet, for over two months, he made no effort to tell Weststar about the mistaken delivery of the funds. When the company contacted him in July, they learned that he had removed the money from the account, putting $12,000 in a CD and spending the rest. By the time Weststar went to the authorities in September, the money still had not been returned to them. The reasonableness of Weststar's belief was confirmed by the investigating officer and the district attorney's office which concluded that there was probable cause for issuing a criminal complaint. The warrant for Jackson's arrest was issued by a magistrate judge after an independent review of the charging document for probable cause. Subsequently, after a preliminary hearing at which Jackson was represented by his current attorney, the presiding magistrate judge found probable cause to bind Jackson over for trial in district court. "[T]he fact that a plaintiff has been bound over for trial on the criminal matter constitutes prima facie evidence of the existence of probable cause for the detention." *Roberts v. Goodner's Wholesale Foods, Inc.,* 50 P.3d 1149, 1152 (Okla.Civ.App.2002), *cert. denied,* Jul. 2, 2002; *Christopher v. Circle K Convenience Stores, Inc.,* 937 P.2d 77, 79 (Okla.1997) (stating that a finding of probable cause at a preliminary hearing binding over a defendant for criminal trial precluded a plaintiff in a subsequent civil suit for false arrest from relitigating the issue of probable cause).

{19} In *DeVaney,* this Court held that "[a]n unfavorable termination for the malicious-abuse-of-process plaintiff, meaning some form of recovery for the original-proceeding plaintiff, is 'conclusive evidence of the existence of probable cause.'" *Id.* ¶ 23 (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 120, at 894 (5th ed.1984).) In this case, there was no favorable termination for Jackson in either the civil or criminal proceeding. In the civil

proceeding, on a motion for summary judgment, the trial court found for Weststar and ordered Jackson to repay the money with interest from the date that he had taken the money from the account to purchase the CD. The criminal case was dismissed on procedural grounds, not on the merits. *See* Dobbs, *supra,* § 434, at 1226 ("When the criminal prosecution is terminated because of a mere lapse of time, ... or for other reasons that do not bear even remotely upon the merits, courts have held that the termination is not favorable to the accused. . . .").

## 2. Procedural Impropriety.

{20} A procedural impropriety under the tort of malicious abuse of process might arise if there was an improper use of criminal or civil process in a manner not contemplated by law. *DeVaney,* 1998–NMSC–001, ¶ 28, 124 N.M. 512, 953 P.2d 277. There is no liability when the defendant in an abuse of process claim has done nothing more than carry out the process to its authorized conclusion, even if done with bad intentions. *Id.* ¶ 20 ("Nevertheless, the filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive.").

{21} The *Weststar* majority found that the telephone call made by Detective Boutelle to Jackson's first attorney during the detective's first meeting with a Weststar employee constituted a misuse of process. *Weststar,* 2002–NMCA–009, ¶ 41, 131 N.M. 493, 39 P.3d 710. The Court characterized the telephone call as a procedural impropriety, because it was "a form of extortion" intended "to compel Jackson to return the money owed to Weststar." *Id.* Moreover, the *Weststar* majority found, the telephone call was sufficient evidence for a reasonable jury to have concluded that the detective "was acting on behalf of Weststar and therefore Weststar should be charged with Boutelle's action." *Id.* However, as stated above, a report to the authorities of possible criminal activity is not legal process and neither are the pre-trial investigative actions of the police. As a matter of law, this would not be sufficient to

constitute the "legal process" required for a claim of abuse of process. At trial, Jackson did not allege or offer any evidence to prove that Weststar performed any wrongful act during the course of the criminal proceeding. No testimony was offered to show an involvement by Weststar in the criminal proceedings after their initial involvement in reporting to the police about Jackson's retention of their funds; rather the uncontradicted testimony by the investigating detective and the Weststar employees was to the contrary. We conclude that Weststar did not maliciously misuse the legal process.

{22} Generally, one can only be charged with the actions of another if that individual is acting as one's agent under a principal-agent relationship or an employer-employee relationship. *See Madsen v. Scott,* 1999–NMSC–042, ¶¶ 8–9, 128 N.M. 255, 992 P.2d 268. At trial, Jackson did not claim that the detective was acting as Weststar's agent, and no evidence was presented that would support such a claim. Although Ms. Lynch was present when the detective called Jackson's lawyer to tell him about the possible criminal investigation, Detective Boutelle did not testify that he had done so at her request. Ms. Lynch testified that the detective had initiated the telephone call on his own and that she had not asked him to call anyone. There was no basis in law or in fact for the *Weststar* majority to have charged Weststar with the actions of Detective Boutelle.

## C. Primary Motive to Accomplish an Illegitimate End.

{23} A plaintiff claiming malicious abuse of process must also prove that the defendant initiated the legal proceedings primarily to accomplish an illegitimate end, that is, "to accomplish a purpose for which [the legal process] is not designed." *DeVaney,* 1998–NMSC–001, ¶ 29, 124 N.M. 512, 953 P.2d 277. To prove this element, a plaintiff must show that the defendant did more than act with ill will or spite. *Id.* In *DeVaney,* this Court stated that neither lack of probable cause nor an improper purpose created an illegitimate end for a legal proceeding, although they could be used to support

an inference of an improper purpose. *Id.* ¶ 30. "[T]he burden of proving the overt act by independent evidence remains upon the plaintiff." *Id.*

{24} On appeal, Jackson relies upon the Restatement (Second) of Torts § 668 comment d, which describes the principal situations in which criminal proceedings are initiated for an improper purpose as being, "(1) when the accuser does not believe in the guilt of the accused, (2) when the proceedings are initiated primarily because of hostility or ill will toward the accused, (3) when the proceedings are initiated for the purpose of obtaining a private advantage even though the advantage might legitimately have been obtained in civil proceedings." (citation omitted) He relies in particular upon comment g to Section 668 for the following language, "[O]ne who initiates the proceedings to force the accused to pay money … does not act for a proper purpose. This is true although the money is lawfully owed to the accuser … so that relief, might have been secured in appropriate civil proceedings." Restatement (Second) of Torts § 668 cmt. g. The *Weststar* majority also relied on this language in finding that Weststar acted with an improper motive. *Weststar*, 2002–NMCA–009, ¶¶ 42–43, 131 N.M. 493, 39 P.3d 710.

{25} However, we note that comment g also states, "Nevertheless, if the accuser's belief in the criminal character of the accused's conduct is reasonable, the proceedings and the existence of an improper purpose is not enough to make [the accuser] liable." Restatement (Second) of Torts § 668 cmt. g. No evidence was presented that Weststar initiated an unfounded criminal prosecution because of ill will or hostility toward Jackson. At trial, evidence was presented that Weststar provided the authorities with relevant information concerning someone who had received approximately $13,000 belonging to Weststar and who, they believed, did not intend to return the money. Additionally, Weststar's belief in the criminal character of Jackson's actions was vindicated by the investigation of the detective, the approval of the criminal complaint by a district attorney, and the finding of probable cause after a preliminary hearing. As a matter of law, there was insufficient evidence to conclude that Weststar acted to accomplish an illegitimate end.

## III. CONCLUSION

{26} In pursuing a tort claim of malicious abuse of process, a plaintiff's failure to prove any one of its elements would be fatal to his or her claim. Our review of the record persuades us that Jackson did not satisfy any elements of the tort, and we hold that this failure defeats his claim. We reverse the district court and the Court of Appeals on the claim of malicious abuse of process, the award of compensatory and punitive damages, and the order on prejudgment interest. We remand this case to the trial court for entry of judgment for Weststar and against Jackson.

{27} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, PAMELA B. MINZNER, and PETRA JIMENEZ MAES, Justices.