# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-032**

**Filing Date: March 24, 2020**

**No. A-1-CA-36814 and A-1-CA-37086**
**(consolidated for purpose of opinion)**

**MICHAEL O'BRIEN and**
**O'BRIEN AND ASSOCIATES, INC.,**

> Plaintiffs-Appellants/Conditional
> Cross-Appellees,

v.

**JENNIE BEHLES; BEHLES LAW FIRM PC;**
**BEHLES LAW FIRM; RON MILLER; RON**
**MILLER CPA; RON MILLER CPA, PC; and**
**MILLER AND ASSOCIATES, CPA, PC,**

> Defendants-Appellees/Conditional
> Cross-Appellants.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Raymond L. Romero, District Judge**

Released for Publication June 23, 2020.

Law Offices of Daymon B. Ely
Daymon B. Ely
Albuquerque, NM

William G. Gilstrap, P.C.
William G. Gilstrap
Albuquerque, NM

for Appellants

Martin, Dugan & Martin
W.T. Martin, Jr.
Carlsbad, NM

for Appellees Jennie Behles, Behles Law Firm, PC, and Behles Law Firm

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
R.E. Thompson
Brian K. Nichols
Elizabeth A. Martinez
Albuquerque, NM

for Appellees Ron Miller, Ron Miller CPA, Ron Miller CPA, PC, and Miller and Associates, CPA, PC

**OPINION**

**VANZI, Judge.**

**{1}** Plaintiffs Michael O'Brien (O'Brien) and O'Brien and Associates, Inc. (OBA) appeal from the district court's order granting judgment as a matter of law in favor of Defendant Behles Law Firm, PC (Behles firm). Plaintiffs brought a malicious abuse of process claim against the Behles firm and others in connection with the litigation of a lien claim against OBA's property. Plaintiffs raise three arguments on appeal. First, Plaintiffs contend that the district court erred in holding that O'Brien, individually, lacked standing. Second, they argue that the district court erroneously granted judgment as a matter of law on OBA's malicious abuse of process claim. Finally, Plaintiffs seek reversal of the district court's award of costs to the Behles firm. The Behles firm argues, on conditional cross-appeal, that the district court erred (under the Rules of Evidence, and under principles of collateral estoppel) by admitting into evidence the findings of fact and conclusions of law resulting from the lien litigation.

**{2}** We affirm the district court's dismissal of O'Brien, individually, who was not a real party in interest. However, we reverse the district court's dismissal of OBA's malicious abuse of process claim. We hold as a matter of first impression that lack of probable cause to continue proceedings is a cognizable malicious abuse of process claim. Plaintiffs asserted such a claim in this case, and the district court erred in dismissing it. Among the district court's errors was its decision to give preclusive effect to all of the underlying findings of fact and conclusions of law and to admit these into evidence. We also reverse the award of costs to the Behles firm.

**BACKGROUND**

**{3}** To say that this litigation has been protracted would be an understatement. It has persisted over fourteen years, through two lawsuits, two trials, a mistrial, and two appeals. Numerous attorneys and judges have been involved in both proceedings. In the first lawsuit, some of the Defendants claimed to have a lien on real property owned by Plaintiff OBA. The lien claim was relatively complex and resulted in a lengthy trial, appeal, and a post-judgment motion. At each step, the claim was resolved in OBA's favor.

**{4}**     In this (second) lawsuit, Plaintiffs claim that Defendants maliciously abused the proceedings in the first lawsuit. Complicating matters, it appears that Plaintiffs, Defendants, and the district court each have a different understanding of Plaintiffs' malicious abuse of process claim. They also appear to ignore portions of the record and aspects of the law that do not conform to their understanding of the case. These divergent paths resulted in a combination of omissions and errors that has rendered our review circuitous and difficult. The briefing on appeal was, often, of little assistance. In order to assist the reader, we begin by explaining what happened in each lawsuit.[1] We then turn to the parties' arguments.

## I.     The Lien Litigation

**{5}**     The lien litigation concerned real estate known as the Orilla del Rio property, owned by OBA. On August 22, 2002, OBA entered into a contract for sale of an undescribed piece of realty to an entity called Del Rio Corporation (Del Rio), with Ron Green signing on behalf of Del Rio as its manager. Shelby Phillips III (Phillips) loaned Del Rio the funds for the $100,000 down payment on the contract. OBA and Green intended for Del Rio to develop the Orilla del Rio property, and Green was supposed to (but did not) prepare a final contract and set up an escrow account on behalf of the corporation for that purpose. Del Rio was in default under the contract by early 2003. Moreover, Green had not actually formed Del Rio when he signed the contract with OBA; according to Green, "Del Rio Corporation" was already in use by another business, so he formed an entity called Riverside Properties Corporation (Riverside) instead. Ostensibly, Riverside was created to fulfill the buyer's obligation under the August 22, 2002 contract. However, there was no written assignment of the contract to Riverside, and its certificate of incorporation was revoked by the State of New Mexico effective March 31, 2003, and never reinstated.

**{6}**     Green, a former a client of the Behles and Miller firms, was indebted to them for unpaid professional fees for matters unrelated to the issues in the lien litigation. On July 2, 2004, the firms filed an action to foreclose on certain security interests purportedly conveyed to them by Green in consideration for his debt.[2] One of those was a "[c]ollateral assignment or security agreement" (security agreement) "covering an[] undivided one-half (½) interest in all of Riverside Properties Corporation's interest in assignment of the Molly Doolittle contract on real property and water rights." The underlying security agreement document, recorded in July 2003, was apparently signed by Phillips as President of Riverside, and indicated that it was conveying a one-half interest in "[a]ssignment of Molly Dolittle's [sic] contract on Real Estate properties,"

---

1 This background is drawn from the evidence presented in the malicious abuse of process litigation and from our opinion on appeal of the first lawsuit, *O'Brien & Associates, Inc. v. Behles Law Firm, P.C.*, No. 30,724, mem. op. (N.M. Ct. App. July 12, 2012) (non-precedential). Although some of the lien litigation facts were not properly before the district court in the malicious abuse of process trial, we include them here in order to provide a general history and to furnish a context for our analysis below.

2 The Behles firm was counsel in the lien case, representing the firm's interest, and the interest of Miller's accounting firm (Miller is, or was at the relevant time, a CPA).

describing the Orilla Del Rio subdivision.[3] Based on this security agreement and a disclaimer of interest from Riverside (also apparently signed by Phillips), and upon Green's consent, judgment was entered against Green and Riverside, in favor of the Behles and Miller firms. The firms recorded the transcript of judgment in Sierra County in October 2004. The firms claimed their lien on the Orilla del Rio property by way of the aforementioned security agreement and transcript of judgment.

{7}     OBA filed suit in 2006, seeking to cancel the liens on the Orilla del Rio property, one of which was the lien claimed by Behles and Miller. Discovery progressed, and in May 2009, while cross-motions for summary judgment were pending, Phillips was deposed. He testified that the signatures of "Shelby Phillips III" on the security agreement and disclaimer of interest were not, in fact, his signatures. When asked if he had authorized Green to sign these documents, Phillips stated that he could not recall ever giving Green permission to sign on his behalf. OBA's counsel at the time, Douglas Baker, wrote a letter to Behles on May 15, 2009, asking that the Behles and Miller firms dismiss their lien claim, given the testimony of Phillips, together with the other evidence developed in discovery (showing, for instance, that Riverside's articles of incorporation were revoked prior to any purported conveyance to the Behles and Miller firms). Baker also indicated that, if the firms refused to dismiss the claims, he would consider filing a claim for malicious abuse of process. Behles responded that she did not believe Phillips' testimony, and that she planned to conduct further investigation into Riverside's incorporation documents.

{8}     Oral argument on the pending summary judgment motions was held on June 8, 2009. Phillips had not yet signed his deposition testimony, and the parties wished to depose Green (who had proved difficult to notice for deposition); accordingly, the parties sought further discovery. Recognizing that these issues would not be resolved before trial, which was scheduled to commence the next month, the district court denied the motions for summary judgment, citing in its brief order that "material facts remain in dispute." Although the record is unclear, it appears that Green was finally deposed approximately two weeks before the commencement of trial. Green apparently testified that he had in fact signed Phillips' name to the articles of incorporation for Riverside, the security agreement, and the disclaimer of interest, but that Phillips had authorized Green to do so.

{9}     On May 13, 2010, following a ten-day bench trial, the district court judge, Edmund Kase, III, entered findings of fact and conclusions of law in favor of OBA, concluding that the Behles and Miller firms did not have a valid lien against the Orilla del Rio property. Judge Kase found that the security agreement, disclaimer of interest, and Riverside articles of incorporation were forged documents. Judge Kase also concluded that the security agreement and disclaimer of interest were invalid, because a power of attorney is statutorily required for conveyances on behalf of another of interests in real

---

3 It appears the document may have been worded this way because the August 22, 2002 contract included a provision for Del Rio to pay $75,000 to Molly Doolittle—money owed by O'Brien on the original contract of sale, from Doolittle to O'Brien, on the Orilla del Rio property.

property, *see* NMSA 1978, §§ 47-1-5 (1897), -7, (1901) -11 (1937), and there was no evidence that Phillips had granted such power to Green.

**{10}** Judge Kase stated that the transcript of judgment, having been obtained in part through the forged documents, did not create a judgment lien against the Orilla del Rio property. Moreover, Riverside had no equitable or other interest in the Orilla del Rio property. First, Riverside had not acquired Del Rio's interest in the August 22, 2002 contract. Among other things, there was no written assignment from Del Rio to Riverside, nor evidence of OBA's written consent (required under the contract) to any assignment of the purchaser's interest. Second, even if Riverside had acquired Del Rio's interest, Riverside's corporate status had been revoked prior to the signing or recording of the documents through which it purportedly conveyed an interest to the Behles and Miller firms, rendering those documents a "nullity." Judge Kase also found that OBA and Green did not intend Green to be personally interested in the Orilla del Rio real estate, or to be bound by the contract. Moreover, the Behles and Miller firms stipulated that Green had no personal interest in the property, and that any interest he had was abandoned prior to or as a result of Green's bankruptcy (entered September 9, 2007).

**{11}** Judge Kase stated in his findings that the Behles and Miller firms had become aware "as of at least May 8, 2009" that Phillips did not sign the collateral assignment or security agreement, or the disclaimer of interest, but that the firms "transferred, issued, or continued to use and rely upon" those documents, knowing "that they contained acknowledgements of their legal efficacy which were improper and/or forged." However, Judge Kase rejected some of OBA's proposed findings that Behles and Miller had participated in the forgeries or had committed fraud.

**{12}** The Behles and Miller firms appealed. In July 2012, this Court affirmed the district court's findings and conclusions in their entirety, on several grounds. The Behles and Miller firms' primary argument on appeal was that they had a valid lien on the Orilla del Rio property by way of Green's personal interest in the August 22, 2002 contract, which they claimed had not been terminated prior to their judgment foreclosing Green and/or Riverside's interest in that contract. But we agreed with Judge Kase's findings that Green individually never had any equitable interest under that contract. Moreover, we noted the firms' apparent stipulation that Green had no such interest.

## II.     The Malicious Abuse of Process Litigation

**{13}** On March 4, 2011, while the lien suit was pending before this Court on appeal, Plaintiffs brought a claim for malicious abuse of the lien proceedings, against the Behles firm, Jennie Behles (Behles) individually, the Miller firm, and Ron Miller (Miller) individually (collectively, Defendants).[4] Plaintiffs brought this claim through amendment of an existing complaint (alleging legal malpractice against other defendants not involved in this appeal) before the district court in Lincoln County. As we discuss in greater detail below, Plaintiffs' malicious abuse of process claim was that "Defendants

---

4 Both OBA and O'Brien, individually, brought a malicious abuse of process claim against Defendants.

misused the legal process by continuing their defense [of the lien claim] after May 8, 2009, when they learned of information during the deposition of . . . Phillips . . . that showed their defense was without probable cause."

{14}    After this Court issued its decision affirming Judge Kase's dismissal of the lien claim, Plaintiffs filed a motion to bar relitigation of the issues decided by Judge Kase, including virtually all factual findings and conclusions of law relating to the Behles and Miller firms' lien claim. On February 11, 2014, the district court (in Lincoln County) granted Plaintiffs' motion but held that Plaintiffs were permitted to offer as evidence in support of their malicious abuse of process claim only certain findings and conclusions related to the lien claim. The district court also held that Plaintiffs were barred from relitigating findings rejected by Judge Kase (i.e., the findings that the Behles and Miller firms had committed fraud or participated in the forgery), as these had the legal effect of factual findings against Plaintiffs.

{15}    Unsatisfied with this outcome, the Behles and Miller firms filed a motion in the Sierra County case on July 29, 2014, under Rule 1-060(B)(6) NMRA, seeking expedited relief from six of the district court's findings of fact in the lien litigation. Specifically, the firms argued that OBA had used the lien proceedings to "establish" the six identified findings (going mainly to the Behles and Miller firms' knowledge of the invalidity of the forged documents) for a later malicious abuse of process claim. The firms argued that these six findings were unsupported by the record and/or immaterial to the validity of the asserted lien. On February 6, 2015, the district court denied the motion.

{16}    On August 1, 2014, Defendants filed another motion in Lincoln County, seeking to exclude Judge Kase's 2010 decision from evidence at trial. Defendants raised two evidentiary arguments in opposition to the admission of the findings and conclusions in Judge Kase's May 13, 2010 decisions: (1) they were not relevant under Rule 11-402 NMRA to the facts known before the trial; and (2) the jury might give undue weight to or be confused by admission of the findings in evidence, such that the findings should be excluded as prejudicial under Rule 11-403 NMRA. Alternatively, Defendants asked that certain additional findings be admitted in evidence and that the jury be instructed about the findings rejected by the district court. The district court denied the motion to exclude but ordered that Judge Kase's decision could be admitted in its entirety, or that the parties could stipulate to limit the introduction of the decision to the specific findings and conclusions the parties would be arguing to the jury.  Ultimately, Judge Kase's entire decision, including all findings and conclusions were admitted as an evidentiary exhibit.

{17}    At trial,[5] Plaintiffs called as their first witness Baker, who testified regarding the events of the prior litigation, including OBA's attorney's fees, Baker's communications with Behles regarding the lien claim, and Baker's reasons for believing that, following Phillips' deposition and the discovery that Riverside's incorporation had been revoked prior to the signing of the security agreement, the Behles firm could not have had a reasonable belief in the validity of the lien claim. Baker also testified that, approximately two weeks before trial, Behles and Miller had made a settlement demand to O'Brien in

---

5 Following an initial mistrial in 2015, the matter finally proceeded to jury trial in August 2017.

the amount of $600,000 in spite of the fact that any lien on the Orilla del Rio property (if valid) was worth less than half that amount.[6] O'Brien and Miller were also called as witnesses. O'Brien testified that he had to withdraw money from his retirement account in order to pay for some of the legal fees incurred by his corporation in the lien litigation, for which he incurred a $14,000 tax penalty.

{18}   At the close of Plaintiffs' case, the Miller Defendants moved for judgment as a matter of law, which the district court granted, for reasons that we need not detail here. The Behles Defendants joined in a motion for judgment against O'Brien individually for lack of standing, and made their own motion for judgment in favor of the Behles Defendants. The court granted the motion with respect to Behles individually, reasoning that she had not been shown to be an active participant in the lien litigation in her personal capacity. However, the court denied the motion with respect to the Behles firm, finding that "a reasonable jury would have a legal sufficient evidentiary basis to find for [OBA.]" The court also concluded that O'Brien did not have standing to pursue a malicious abuse of process claim, as he was not a party to the underlying lien litigation and was not a real party in interest with respect to the claims against Defendants

{19}   The Behles firm then proceeded with its case, calling Behles, and two expert witnesses—Briggs Cheney, an attorney who testified to the reasonableness of the Behles firm's decision to take the lien claim to trial, and Sam Baca, an accountant who testified regarding damages. Behles testified regarding the various theories upon which she based her decision to pursue the firms' lien claim at trial. Specifically, Behles testified that, if Green's testimony had been credited by Judge Kase, Judge Kase could have found that Phillips had authorized Green to sign the documents at issue, given an exception to the usual requirement of a power of attorney in order to convey real estate on behalf of another, set forth in *Miera v. Miera*, 1919-NMSC-016, ¶ 10, 25 N.M. 299, 181 P. 583. Alternatively, she asserted that she believed Phillips had ratified Green's signature on the relevant documents. Behles testified that she also believed Green to be personally liable on the underlying contracts. Additionally, Behles argued that she had a valid judgment lien against Riverside's interest in the property and that Riverside had validly conveyed its interest to the Behles firm. Finally, Behles agreed that she had made an offer of settlement prior to trial, but insisted that it was for $200,000 to $250,000 and that the $600,000 figure was the total offer of settlement from Defendants, collectively (co-defendant Carl Kelly Construction also had lien claims in the case). She added that she and Miller had "$300,000 worth of debt," and therefore would not have asked for $600,000 in settlement.

{20}   At the conclusion of trial, the district court granted the Behles firm's motion for judgment as a matter of law. In opposition to the motion, Plaintiffs' counsel argued that the Behles firm's pretrial settlement offer was an extortion attempt, but the district court did not consider this claim as a separate malicious abuse of process claim. The district court held that a previous order amending the complaint limited Plaintiffs to a claim that Defendants "misused the legal process by continuing [their] defense [of the lien claim]

---

6 Green apparently valued his own one-half interest in the property (through his alleged partial interest in Riverside) at $200,000 though it is unclear how he reached this figure.

after May 8, 2009, when [Defendants] learned of information during the deposition of [Phillips] that showed [their] defense was without probable cause." (Internal quotation marks omitted.) The district court then concluded that there were no disputed facts pertinent to the question of continuing probable cause and, therefore, it was for the court to decide whether the Behles firm had probable cause to continue prosecuting its lien claim, citing *Weststar Mortgage Corp. v. Jackson*, 2003-NMSC-002, ¶ 16, 133 N.M. 114, 61 P.3d 823, and UJI 13-1639 NMRA.

**{21}** In its analysis of continued probable cause, the district court noted that probable cause "is to be determined at the time the decision is made to proceed or continue with the claim, and should not be judged by some later learned facts[,]" again citing *Weststar Mortgage Corp.*, 2003-NMSC-002, ¶ 16. The district court found that Judge Kase had denied the parties' motions for summary judgment on June 8, 2009, because there was a factual dispute for trial (implying that the dispute constituted the discrepancy between Green's testimony and Phillips' testimony, with respect to the documents ultimately determined to be forged). The district court noted Judge Kase's rejection of proposed findings of fact to the effect that the Behles and Miller firms had themselves committed forgery or fraud, and concluded that this was a "clear indication" that Judge Kase believed the Behles and Miller firms "did not know the documents were forged when it relied on them at trial." The court also concluded that, apart from the factual dispute resulting from Phillips' and Green's testimony and related documents, the Behles firm had an "alternative means of asserting and defending its lien" at trial, namely: the transcript of judgment and judgment lien against Green and Riverside, combined with a partial summary judgment finding (early in the lien litigation) that the O'Brien/Del Rio contract was, initially, a valid contract. In contradiction to its earlier statement that probable cause was a question for the court, the district court then stated that "a reasonable jury would not have a legally sufficient evidentiary basis to find for . . . Plaintiff on the issue that [the Behles firm] lacked probable cause to continue the defense of its lien." Later, the district court awarded costs to the Behles firm. Plaintiffs appealed.[7]

## DISCUSSION

**{22}** The first issue we address on appeal is whether the district court erred in granting the Behles firm judgment as a matter of law as to O'Brien, individually, on the basis that O'Brien lacks standing to pursue a malicious abuse of process claim against the Behles firm and is not a real party in interest. The second issue is whether the district court erred in granting judgment in favor of the Behles firm on the basis that the Behles firm had probable cause to take its lien claim to trial. In the course of discussing this issue, we address both parties' arguments regarding the effect of Judge Kase's findings and conclusions on the district court's determination. Last, we address the issue of the district court's award of costs to the Behles firm.

---

7 Plaintiffs did not appeal the district court's dismissal of the claim against Behles, individually. Moreover, we do not address Plaintiffs' arguments concerning the judgment in favor of the Miller Defendants, as Plaintiffs and the Miller Defendants have now reached a settlement.

## I.      Standard of Review

**{23}**    Judgment as a matter of law may be entered against a party where a reasonable jury would not have a legally sufficient evidentiary basis to find in the party's favor on an issue essential to the party's cause of action. *See* Rule 1-050(A) NMRA. "Therefore, a directed verdict is appropriate only when there are no issues of fact to be presented to a jury." *Hedicke v. Gunville*, 2003-NMCA-032, ¶ 9, 133 N.M. 335, 62 P.3d 1217. "Any conflicts in the evidence or reasonable interpretations of the evidence are viewed in favor of the party resisting the directed verdict." *Sunwest Bank of Clovis, N.A. v. Garrett*, 1992-NMSC-002, ¶ 9, 113 N.M. 112, 823 P.2d 912. "The sufficiency of evidence presented to support a legal claim or defense is a question of law for the trial court to decide[,]" and, on appeal, we review such questions de novo. *Hedicke*, 2003-NMCA-032, ¶ 9(internal quotation marks and citation omitted).

## II.      O'Brien Is Not a Real Party in Interest

**{24}**    Plaintiffs argue that the district court erred in entering judgment as a matter of law against O'Brien, individually. Plaintiffs' sole arguments on appeal are that (1) New Mexico's cause of action for malicious abuse of process contains no requirement of "party" status in the underlying litigation; and (2) O'Brien has standing to sue because he suffered an individual injury in the form of a tax penalty that O'Brien incurred in order to pay the fees owed by his corporation in the lien litigation. Whether a party has standing to sue or is a real party in interest presents a question of law, which we review de novo. *See Forest Guardians v. Powell*, 2001-NMCA-028, ¶ 5, 130 N.M. 368, 24 P.3d 803; *see also Rienhardt v. Kelly*, 1996-NMCA-050, ¶ 16, 121 N.M. 694, 917 P.2d 963 (holding that, because the plaintiff met the legal criteria set forth in Rule 1-017 NMRA, "it was error for the trial court to dismiss him as an excessive plaintiff").

**{25}**    Standing to sue and real party in interest are distinct but overlapping concepts. Both are "used to designate a plaintiff who possesses a sufficient interest in the action to be entitled to be heard on the merits." 6A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1542 (3d ed. 2010). New Mexico's standing doctrine requires litigants to allege that "(1) they are directly injured as a result of the action they seek to challenge[,] (2) there is a causal relationship between the injury and the challenged conduct[,] and (3) the injury is likely to be redressed by a favorable decision." *ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 1, 144 N.M. 471, 188 P.3d 1222. The issue of standing frequently arises when some governmental action is attacked on the ground that it violates private rights or a constitutional principle. *See, e.g.*, *id.* ¶ 2 (affirming this Court's holding that the plaintiffs lacked standing to seek relief from an allegedly unconstitutional civil forfeiture ordinance); *see also Kent v. N. Cal. Reg'l Office of Am. Friends Serv. Comm.*, 497 F.2d 1325, 1329 (9th Cir. 1974). In contrast to federal standing jurisprudence, in New Mexico, standing is usually a prudential matter, addressed to justiciability, not jurisdiction. *See ACLU*, 2008-NMSC-045, ¶ 9 (holding that "standing in our courts is not derived from the state constitution and is not jurisdictional"); *see also Phoenix Funding, LLC v. Aurora Loan Servs., LLC*, 2017-NMSC-010, ¶¶ 19-20, 390 P.3d 174 (reasoning that, "when a claim is created by

statute, the justiciability requirements of standing, ripeness, and mootness can be jurisdictional" but that "when a claim is not created by statute but rather was born of common law, the lack of the traditional justiciability prerequisites does not impair a court's jurisdiction" (emphasis omitted)).

**{26}** Rule 1-017(A) also requires that "[e]very action shall be prosecuted in the name of the real party in interest[.]" This rule is implicated where there is a question as to whether the plaintiff "is the owner of the right being enforced and is in a position to discharge the defendant from the liability being asserted in the suit." *Marchman v. NCNB Tex. Nat'l Bank*, 1995-NMSC-041, ¶ 15, 120 N.M. 74, 898 P.2d 709 (internal quotation marks and citation omitted); *see id.* (holding that the corporation, not its shareholders, owned the rights asserted in the lawsuit). Thus, while standing focuses on whether the plaintiff's injuries are fairly traceable to the defendant's conduct, the real party in interest requirement focuses on whether the plaintiff is "the person who possesses the right sought to be enforced." 6A Wright & Miller, *supra*, § 1542 (noting that, in spite of the confusion regarding these concepts, a "plaintiff must be *both* the real party in interest and have standing" (emphasis added)). However, our courts have sometimes blended the concepts and conceived of the real party in interest requirement as a species of standing. *See, e.g.*, *Marchman*, 1995-NMSC-041, ¶¶ 15-25 (holding that individual shareholders did not have standing to claim damages for injuries to a corporation because the corporation was the real party in interest as to such claims); *Sw. Steel Coil, Inc. v. Redwood Fire & Cas. Ins. Co.*, 2006-NMCA-151, ¶ 11, 140 N.M. 720, 148 P.3d 806 (holding that, because the plaintiff corporation "may have sustained damages separate and distinct from" settlement proceeds paid by the subrogating insurance carrier, the plaintiff had standing as a real party in interest to pursue compensation for any such distinct damages); *Edwards v. Franchini*, 1998-NMCA-128, ¶¶ 3-11, 125 N.M. 734, 965 P.2d 318 (affirming the district court's grant of summary judgment for lack of standing, where the defendants argued that the plaintiffs were not the real party in interest on their breach of contract and legal malpractice claims because such claims were a part of a bankruptcy estate and only the bankruptcy trustee could assert them).

**{27}** Here, the district court concluded that O'Brien lacked standing to assert a malicious abuse of process claim against the Behles firm, because "[a] party who. . . was never named as a defendant or plaintiff in [the] underlying proceeding could not claim it was compelled to incur defense costs in the proceeding." It also concluded that O'Brien, individually, is not a real party in interest for purposes of the malicious abuse of process claim against the Behles firm. Although we question the district court's first conclusion, we do not address whether party status in the underlying proceeding is a standing requirement for a later malicious abuse of process claim because our Supreme Court's analysis in *Marchman* compels the result that O'Brien is not a real party in interest in this case.

**{28}** In *Marchman*, contractual, fraud, and tort claims were brought against a Texas bank by four plaintiffs: a Texas corporation, a New Mexico corporation owning all of the Texas corporation's stock, and two shareholders of the New Mexico corporation. 1995-

NMSC-041, ¶ 1. The district court granted partial summary judgment in favor of the bank as to the New Mexico corporation and the two shareholders, all of whose claims were "derivative of the claims of the Texas corporation." *Id.* ¶ 2. Our Supreme Court agreed that only the Texas corporation was a real party in interest, because "[a] corporation and a shareholder—even a sole shareholder—are separate entities, and a shareholder of a corporation does not have an individual right of action against a third person for damages that result because of an injury to the corporation." *Id.* ¶¶ 15-16. In other words, when the alleged wrongful acts were directed at the corporation, not the shareholders, "the cause of action accrues to the corporation and not to the shareholders in their individual capacit[ies]." *Id.* ¶ 22. "[A]lthough stockholders of a corporation suffer when the corporation incurs a loss, only the corporation may vindicate its rights. An indirectly injured party should look to the recovery of the directly injured party, not [to] the wrongdoer[,] for relief." *Id.* ¶ 17 (internal quotation marks and citation omitted). With respect to this general rule, our Supreme Court recognized only two possible exceptions. A shareholder may bring a claim for damages from injury to the corporation where the shareholder has (1) suffered an injury separate and distinct from other shareholders; or (2) where she is owed a special duty (through contract, or otherwise) by the wrongdoer. *Id.* ¶¶ 19, 21; *see also Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 14, 126 N.M. 717, 974 P.2d 1174 (discussing the two exceptions recognized in *Marchman*).

**{29}**     Here, the injury claimed as a result of the Behles firm's alleged malicious abuse of process is the burden and expense associated with the continued lien litigation. The alleged wrongful conduct—compelling a party to participate in unjustifiable litigation— was directed at OBA, the entity against whom the Behles firm refused to withdraw the lien claim. *See DeVaney v. Thriftway Mktg. Corp.*, 1998-NMSC-001, ¶ 14, 124 N.M 512, 953 P.2d 277, *overruled on other grounds by Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19; *Marchman*, 1995-NMSC-041, ¶ 22. Plaintiffs argue that O'Brien, sole shareholder of OBA, may assert a malicious abuse of process claim, together with the corporation, because O'Brien "obviously is the human being that's involved in the case, [and] has suffered a particular damage" due to a $14,000 tax penalty resulting from the withdrawal of funds from O'Brien's 401-K account.

**{30}**     First, this argument ignores that O'Brien withdrew the funds at issue to pay the legal fees for OBA in connection with the continued lien litigation. The tax penalty associated with the withdrawal is a consequence of the Behles' firm's alleged wrongful conduct *against OBA*, not against O'Brien, individually. *See Delta Automatic Sys.*, 1999-NMCA-029, ¶¶ 13, 16 (applying *Marchman* and holding that the shareholders' alleged injuries, including damage to their personal credit standing, inability to maintain their standard of living, and emotional distress, were derivative of the defendants' alleged breach of duty to the corporation, not any breach of duty to the shareholders directly).

**{31}**     Second, to the extent Plaintiffs' argument may be interpreted as asserting a "special duty" owed to O'Brien, Plaintiffs fail to identify the basis of any such duty. Plaintiffs only contend that a jury should have been permitted to decide whether it was foreseeable that O'Brien would suffer damages as a result of the lien litigation. But

foreseeability is pertinent to *breach* of duty, not the existence of a duty in the first place, and the existence of a duty is a matter of law for the court. *See Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, 2014-NMSC-014, ¶ 4, 326 P.3d 465 (discussing the role of foreseeability when analyzing breach of duty and causation); *id.* ¶ 25 ("Foreseeability is not a question for courts to consider when determining the existence of a duty[.]"); *Oakey v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 22, 399 P.3d 939 ("The existence of a duty is a question of policy to be determined by the court as a matter of law with reference to legal precedent, statutes, and other principles comprising the law." (internal quotation marks and  citation omitted)). Plaintiffs have cited no authority for the proposition that the Behles firm owed O'Brien any special duty above and beyond the firm's duty to OBA; accordingly, we will assume that none exists. *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Indeed, Plaintiffs have not distinguished our holding in *Delta Automatic Systems*, where we concluded, in a similar context, that the defendants did not owe the shareholders any special duty above and beyond their duty to the corporation, "even though the [plaintiffs] were the sole shareholders of [the corporation] and [the d]efendants knew that the [plaintiffs'] livelihood depended on [the corporation's] success." 1999-NMCA-029, ¶ 16. For the foregoing reasons, we affirm the district court's entry of judgment as a matter of law against O'Brien, individually, because he is not a real party in interest with respect to the malicious abuse of process claim against the Behles firm.

### III.     The District Court Erred in Its Dismissal of OBA's Malicious Abuse of Process Claim Against the Behles Firm

{32}     We are forced into a somewhat circuitous discussion of Plaintiffs' malicious abuse of process claim, by virtue of the district court's missteps, together with the parties' arguments ignoring aspects of the factual record and existing law. We address the issues as follows. First, we discuss malicious abuse of process in New Mexico and whether lack of probable cause to continue proceedings is a cognizable malicious abuse of process claim. We hold that it is. Second, we address whether Plaintiffs asserted such a claim in this case. We hold that they did, and that they were properly limited to that claim at trial. Third, we focus on the district court's analysis of whether the Behles firm lacked continued probable cause to litigate its lien claim. In order to do this, we first address the law of collateral estoppel because both parties present arguments about what effect the findings and conclusions from the lien litigation should have had on the probable cause element of OBA's claim. We conclude that the district court erred in giving preclusive effect to all of the findings and conclusions, and we explain the analysis that the district court should have conducted. We also explain why the findings and conclusions should not have been admitted as an evidentiary exhibit. Although this alone would be a basis for reversal of the district court's judgment, in order to provide guidance on remand, we next examine the district court's broader determination that the Behles firm had probable cause to continue its lien claim. We conclude that the district court failed to undertake the necessary examination of the factual record and legal arguments relevant to whether the Behles firm had a reasonable belief that it could prevail on its lien claim at trial. For all these reasons, we reverse and remand.

## A. Malicious Abuse of Process and Lack of Probable Cause to Continue Proceedings

**{33}** New Mexico has restated two traditionally distinct torts—malicious prosecution and abuse of process—as a single cause of action: malicious abuse of process. *DeVaney*, 1998-NMSC-001, ¶¶ 12-17 (explaining the merger of the torts, both of which served the common purpose of "offer[ing] redress to a plaintiff who has been made the subject of legal process" for an improper purpose, and protecting the "interest in freedom from unjustifiable litigation" (internal quotation marks and citation omitted)). The elements of the combined tort of malicious abuse of process are "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Durham*, 2009-NMSC-007, ¶ 29; *see* UJI 13-1636 NMRA. A "judicial proceeding," for purposes of a malicious abuse of process claim, includes both criminal and civil proceedings. UJI 13-1637 NMRA.

**{34}** The first element (misuse of process) requires an "overt act," which may be shown in one of two ways: (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or some other illegitimate end. *Durham*, 2009-NMSC-007, ¶ 29; *see* UJI 13-1639, -1639A NMRA; *DeVaney*, 1998-NMSC-001, ¶ 21. *DeVaney* defined "probable cause," for purposes of the first type of misuse of process, as "the reasonable belief, founded on known facts established after a reasonable pre-filing investigation, that a claim can be established to the satisfaction of a court or jury." 1998-NMSC-001, ¶ 22 (citation omitted); *see* UJI 13-1639. In the second type of misuse of process, an irregularity or impropriety may be shown by the "irregular use of a procedure, or by *some other act* by the defendant that indicates the wrongful use of judicial proceedings." UJI 13-1639A (emphasis added); *see Durham*, 2009-NMSC-007, ¶¶ 29, 31 (noting that "the use of process for an illegitimate purpose forms the basis" for a malicious abuse of process claim, and therefore "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required" (emphasis, internal quotation marks, and citation omitted)). The Committee Commentary in our jury instructions provides examples of "acts" indicating the wrongful use of proceedings, such as a request for excessive damages in the complaint, attachment on property other than that involved in the litigation or in an excessive amount or excessive execution on a judgment. UJI 13-1639A. Although malicious abuse of process is a tort that should be construed narrowly, in order to protect the right of access to the courts, our Supreme Court's intention in combining the formerly distinct torts of abuse of process and malicious prosecution was to preserve them, restating them only "for the sake of simplicity and to avoid confusion." *Durham*, 2009-NMSC-007, ¶ 27.

**{35}** With respect to the first type of misuse of process, our Supreme Court's definition of "probable cause," UJI 13-1639, was taken in part from the Restatement (Second) of Torts Section 675 (1977), which provides that "[o]ne who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the

claim is based" and explains in comment d, that the touchstone is whether he reasonably believes he can establish the existence of such facts "to the satisfaction of a court and jury." *See DeVaney*, 1998-NMSC-001, ¶ 22. This definition applies to the Restatement's definition of malicious prosecution in the civil context, also called the "wrongful use of civil proceedings," as follows:

> One who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if
>
> (a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and
>
> (b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

Restatement (Second) of Torts § 674 (1977). Our Supreme Court did not incorporate favorable termination into our cause of action for malicious abuse of process, concluding that this traditional requirement (reflected in Restatement (Second) of Torts Section 674(b)) was a "procedural and evidentiary safeguard" in malicious prosecution actions, not an element of the underlying claim. *DeVaney*, 1998-NMSC-001, ¶ 23. However, the remainder of the Restatement (Second) of Torts Section 674's definition is similar to the first type of malicious abuse of process claim in New Mexico. *Compare* Restatement (Second) of Torts § 674(a) (identifying the commencement or continuation of an action without probable cause and for a purpose other than "proper adjudication of [a] claim" as a misuse of process), *with* UJIs 13-1636, -1639 (together defining beginning a proceeding without probable cause and in order to accomplish an illegitimate end as a "misuse of process"). The distinction is, of course, that the Restatement (Second) of Torts Section 674 explicitly recognizes that one might not only initiate, but *continue* a proceeding without probable cause. *See* Restatement (Second) of Torts §§ 674, 675. Restatement (Second) of Torts Section 674, comment c explains that "one who continues a civil proceeding that has properly been begun or one who takes an active part in its continuation for an improper purpose after he has learned that there is no probable cause for the proceeding becomes liable as if he had then initiated the proceeding." New Mexico courts have not squarely addressed the viability of a cause of action premised on continuing litigation without probable cause, but we see no reason to diverge from Restatement (Second) of Torts Section 674.

{36}    First, we see no meaningful conceptual distinction between the conduct of a defendant who commences litigation without probable cause and the conduct of a defendant who continues litigation without probable cause. Though most jurisdictions conceptualize malicious prosecution and abuse of process as distinct torts, those addressing the question of liability for continued prosecution of a criminal or civil action without probable cause have almost unanimously recognized such a cause of action as a logical corollary to a cause of action for initiating a case without probable cause. *See,*

*e.g.*, *Turner v. Thomas*, 794 S.E.2d 439, 450-56 (N.C. 2016) (Ervin, J., concurring) (collecting cases from thirty-four states recognizing a cause of action for malicious prosecution under a lack of continued probable cause theory, and noting that, as of December 2016, only Delaware had explicitly rejected the theory). Moreover, while neither party drew our attention to the case, our Supreme Court also approved of a jury instruction acknowledging the viability of such a cause of action under the former tort of malicious prosecution of a civil action. *See Bokum v. Elkins*, 1960-NMSC-091, ¶¶ 9-10, 17, 67 N.M. 324, 355 P.2d 137 (affirming judgment in favor of the plaintiff, finding sufficient the district court's instruction that the defendants were liable for malicious prosecution if the jury found, among other things, that the defendants "were without probable cause to maintain or to continue said civil action and that said action was instituted or continued in malice on the part of the [d]efendants").

**{37}**     Second, we have said that, in addition to an illegitimate purpose, malicious abuse of process requires some "overt act," in order to "prevent a chilling effect on claims well-founded in fact and law and asserted for the legitimate purpose of redressing a grievance." *DeVaney*, 1998-NMSC-001, ¶ 21. A claim premised on lack of continued probable cause would preserve this requirement because the plaintiff would have the burden of proving an overt act: the defendant's pursuit of his or her claim in spite of the discovery of facts negating a reasonable belief that the claim could be proved to the satisfaction of a court or jury. *See id.* ¶ 22; Restatement (Second) of Torts §§ 674 cmt. c, 675(a) cmt. d.

**{38}**     Third, our Supreme Court has already relied on aspects of the above-discussed sections of the Restatement, and other related sections, for the development of New Mexico's malicious abuse of process cause of action. *See, e.g.*, *DeVaney*, 1998-NMSC-001, ¶ 44 (quoting comment j to Restatement (Second) of Torts Section 674 for the proposition that "[w]hether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought and whether the withdrawal is evidence of a lack of probable cause for their initiation, depends upon the circumstances under which the proceedings are withdrawn"); *see also DeVaney*, 1998-NMSC-001, ¶ 41 (relying on Restatement (Second) of Torts Sections 681B(1)(c) and 681B(2)(a) (1977) for the proposition that probable cause is a question for the trial judge, not the jury, but that the jury is to determine the factual circumstances relevant to the probable cause analysis); *Durham*, 2009-NMSC-007, ¶ 26 (citing, in part, the Restatement (Second) of Torts Section 682 (1977), which provides that "one who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process" (alteration omitted)). Plaintiffs offer no reason why the Restatement's framework should be rejected here.

**{39}**     Plaintiffs argue that our Supreme Court, in *Durham*, 2009-NMSC-007, ¶ 29, "held that lack of probable cause is only a required element for an abuse of process claim that occurs at the initiation of a claim." But this is incorrect; *Durham* simply held that a plaintiff alleging a procedural impropriety or wrongful use of proceedings (the second type of misuse of process) need not have initiated judicial proceedings. *Id.* ¶ 29. To the

extent Plaintiffs argue that our current case law and jury instructions do not overtly provide a cause of action for a claim based on the lack of continued probable cause, this only begs the question, because, as we have said, we find no case in which our courts were asked to rule on the issue. It seems to us that this cause of action has not been incorporated into our definition because it has never been addressed, not because it was rejected. Moreover, as we discuss below, it was Plaintiffs who argued to the district court a cause of action for malicious prosecution based on lack of continued probable cause, though they now regret the district court having followed their lead.

## B.      Plaintiffs' Malicious Abuse of Process Claim

**{40}**    Plaintiffs argue that they did not allege a lack of continued probable cause for Defendants' lien claim, but the wrongful use of the lien proceedings "for an improper or illegitimate motive[.]" The Behles firm, on the other hand, asserts that Plaintiffs' theory of the case was always that Defendants continued the lien litigation without probable cause following the Phillips deposition, such that Plaintiffs waived or should be estopped from asserting any other theory.

**{41}**    Plaintiffs' initial complaint contained no specific factual allegations regarding Defendants' asserted abuse of process. The Miller Defendants filed a motion for summary judgment on April 1, 2013, surmising from the underlying case that Plaintiffs were alleging (1) a lack of continuing probable cause following Phillips' deposition for Defendants to pursue the lien claim, and/or (2) procedural impropriety, in that Defendants "advanced" improperly executed or forged documents, following the Phillips deposition. Plaintiffs' response suggested that they were embracing both of these theories, focusing primarily on the second. At oral argument on the motion, however, Plaintiffs' counsel argued almost exclusively the first claim (citing Section 674 of Restatement (Second) of Torts): that Defendants pursued the lien after learning that the underlying documents were forged and/or improper, continuing the litigation without probable cause. The district court denied the Miller Defendants' motion.

**{42}**    Plaintiffs then reasserted the probable-cause-based theory in argument on Defendants' motion to dismiss based on the statute of limitations, in which Defendants had (again) sought clarification regarding Plaintiffs' theory of the case. Based on Plaintiffs' argument, the district court found that the only "event" at issue, for statute of limitations purposes and for purposes of clarifying the factual basis of Plaintiffs' claim, was the continuation of the litigation after Phillips' deposition. During the presentment hearing on this motion, Defendants asked that the factual basis of Plaintiffs' claim be memorialized in some way, "so that when we get to trial we haven't prepared a case or a defense based on lack of probable cause [after] . . . Phillips' deposition and all of a sudden we're having to defend against some other lack of probable cause [or] some other procedural impropriety."

**{43}**    Ultimately the district court entered an order on January 15, 2014, resolving the statute of limitations issue, but also amending the complaint by interlineation to state that "Defendants misused the legal process by continuing their defense after May 8,

2009, when they learned of information during the deposition of . . . Phillips . . . that showed their defense was without probable cause." The district court further ordered that "Plaintiffs may not base their claim for malicious abuse of process on any other events, unless they submit to the [c]ourt a list of such events, and the dates upon which they occurred . . . on or before March 24, 2014." The district court explained that "[t]his [o]rder does not prevent Plaintiffs from offering evidence at trial of other events in support of their claim based upon Defendants' continuing defense after May 8, 2009."

{44}     At the pretrial conference on August 14, 2017, defense counsel referenced the court's January 15, 2014 order, and the absence of any further amendments to the complaint, stating that "we understand that this case is limited to continuing the case after May 8, 2009, . . . [a]nd there is no claim for procedural impropriety."  Plaintiffs' counsel responded: "That's right[,]" and "Yeah . . . [t]hat's the case." When the district court mentioned that the model UJI form jury instructions would have to be modified, because the form refers to initiating a case without probable cause, Plaintiffs' counsel replied that "[w]e're not talking . . . about initiating the case," and told the court that the operative time-frame was "when [Defendants] became aware . . . that there was a forged signature on critical documents." The court then clarified that "if they did have probable cause, it ceased to exist essentially [after] that deposition?" To which Plaintiffs' counsel responded, "[W]e have submitted some jury instructions on that specific issue." The court stated, "Okay. . . . We're not going to be talking about a procedural impropriety." The pretrial order states as Plaintiffs' contention that "Defendants . . . continued their claim against [OBA's] property based on forged documents and other insufficient evidence and did so with an improper or illegitimate motive and, when given the opportunity by the judge to dismiss their claims . . . refused to do so." Defendants' statement sets forth why they purportedly did not lose probable cause to pursue the lien claim after May 8, 2009.

{45}     In spite of the foregoing, Plaintiffs argue that they have all along been asserting the second type of malicious abuse of process claim—wrongful use of proceedings under UJI 13-1639A, which (as set forth above) requires a showing of an irregular use of a procedure, or "some other act . . . that indicates the wrongful use of judicial proceedings." While Plaintiffs did, in fact, submit to the court a proposed jury instruction under UJI 13-1639A, their instruction does not follow the requirement of describing the act(s) of impropriety or the act(s) indicating the wrongful use of proceedings—it only states that Defendants "misused the process to extort money from [P]laintiffs." An improper purpose, such as extortion, is an element of both types of malicious abuse of process—but it is distinct from the overt act requirement. *See* UJI 13-1636, -1639, -1639A; *see also DeVaney*, 1998-NMSC-001, ¶ 30 (noting that " 'it may not be inferred from evidence of an improper purpose alone that there was not probable cause,' . . . or that there was not a proper use of process, and the burden of proving the overt act by independent evidence remains upon the plaintiff" (quoting Restatement (Second) of Torts § 669A cmt. b (1977))). Furthermore, although Plaintiffs did not submit a probable-cause-based instruction under UJI 13-1639, they submitted another instruction that would have asked the jury to find that Defendants continued their lien claim with an illegitimate motive at any one of four points after the discovery that the relevant

documents were forged or invalid. This instruction failed to address probable cause, but it certainly suggests that continuation of the litigation is the overt act upon which Plaintiffs' claim is based. Though Plaintiffs' arguments at trial may be read collectively to assert claims that the Behles firm's reliance on legally invalid documents and its extortionate settlement offer were acts demonstrating the wrongful use of proceedings, even these arguments were ambiguous. On appeal, Plaintiffs essentially ignore the requirement of an act or acts showing the wrongful use of proceedings.

**{46}** In short, until the commencement of trial, and to some extent during the trial, Plaintiffs sought to maintain a claim that Defendants continued the litigation without probable cause, while ignoring the elements of probable cause. This option was not available to them. Parties are generally bound by the issues formulated in the pretrial conference, and resulting order, which may be modified only to prevent manifest injustice. *See* Rule 1-016(E) NMRA; *see also Fahrbach v. Diamond Shamrock, Inc.*, 1996-NMSC-063, ¶ 24, 122 N.M. 543, 928 P.2d 269 (holding that "by the time of entry of the pretrial order, our rules contemplate that the issues to be tried will have been identified" and that "[t]he principle is well established that a pretrial order, made and entered without objection, and to which no motion to modify has been made, controls the subsequent course of action" (internal quotation marks and citations omitted)). As set forth above, the pretrial conference and order in this case indicate that Plaintiffs' claim was based on the alleged lack of continued probable cause to prosecute the lien claim, following the Phillips deposition. In addition, "judicial estoppel prevents a party who has successfully assumed a certain position in judicial proceedings from then assuming an inconsistent position, especially if doing so prejudices a party who had acquiesced in the former position." *Sw. Steel Coil, Inc.*, 2006-NMCA-151, ¶ 18 (internal quotation marks and citation omitted). Plaintiffs benefited from asserting a probable-cause-based theory during pretrial motion practice, and it is generally manifestly prejudicial to any litigant for the opposing party to materially alter the basic theory of his or her claim or defense during trial. Accordingly, Plaintiffs are estopped from arguing that a probable cause analysis does not apply to OBA's malicious abuse of process claim.

**{47}** For the same reasons, the district court did not abuse its discretion in limiting OBA to a claim based on the alleged lack of continued probable cause. *See* Rule 1-016(E); *Fahrbach*, 1996-NMSC-063, ¶¶ 24-25 (holding that "[o]rdinarily, only those theories of liability contained in the pretrial order will be considered at trial" and that, although trial courts have latitude to amend the pretrial order to conform to the evidence or to prevent manifest injustice, such amendment is a matter of discretion). This is particularly so because there was a prior order requiring Plaintiffs to file a motion if they wished to add a claim other than a claim based on Defendants "continuing their defense" after May 8, 2009.[8] Having decided that Plaintiffs asserted a cognizable theory

---

8 We acknowledge that the January 15, 2014 order resolved a motion concerning the statute of limitations, and that the district court's primary concern was ensuring that Plaintiffs' cause of action was within the statute of limitations; however, as set forth above, it is apparent that the district court also amended the complaint based on Plaintiffs' own articulation of their claim, and in response to Defendants' request that the claim be memorialized. Plaintiffs did not object to the entry of the order, nor did they file a motion to modify the order or the complaint.

that Defendants lacked continued probable cause to pursue the lien litigation and that OBA was limited to that theory, we turn to the district court's decision in this case.

## C. Application of the Sierra County Findings and Conclusions to the Probable Cause Determination

**{48}** Before addressing the district court's broader probable cause determination, we address the district court's treatment of Judge Kase's findings and conclusions from the lien litigation. The Behles firm argues that the district court erred in giving collateral estoppel effect to Judge Kase's findings and conclusions because Plaintiffs "failed to establish that the ultimate facts and issues in the [malicious abuse of process] lawsuit were actually litigated and necessarily decided" in the Sierra County case.[9] The Behles firm also argues that Judge Kase's findings and conclusions should not have been admitted into evidence because they were irrelevant and more prejudicial than probative. Plaintiffs respond that the Behles firm sought to defend itself in the malicious abuse of process case through relitigating the lien's validity, which the firm should be estopped from doing. Plaintiffs also note that the district court apparently ignored Judge Kase's findings to the effect that the Behles firm was aware of the legal invalidity of the documents upon which the firm was relying at trial.

**{49}** Collateral estoppel "promotes judicial economy and protects parties from endless relitigation." *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 13, 139 N.M. 637, 137 P.3d 577. Unlike res judicata, which precludes "relitigation of the same claim between the same parties," collateral estoppel, also called "issue preclusion," prevents a party from relitigating ultimate factual issues that were actually and necessarily decided in a prior suit. *Id.* ¶¶ 2, 13 (internal quotation marks and citation omitted). The party seeking to preclude relitigation of an issue must demonstrate that:

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Shovelin v. Cent. N.M. Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 10, 115 N.M. 293, 850 P.2d 996. "If the movant introduces sufficient evidence to meet all elements of this test, the trial court must then determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation." *Id.* Our Supreme Court has stated that "the doctrine of offensive collateral estoppel may be applied when a plaintiff seeks to foreclose the defendant from litigating an issue the defendant has

---

9 The Behles firm adopted arguments made by the Miller firm in its brief on conditional cross-appeal. The Miller brief raises other arguments regarding evidentiary rulings by the district court, but these are moot in light of the settlement between the Miller Defendants and Plaintiffs. Nor do we address the argument in the Miller brief that Plaintiffs failed to establish a manifest lack of probable cause because this argument does not belong in a cross-appeal—it is simply another argument in opposition to Plaintiffs' brief in chief. In addressing Plaintiffs' brief, Defendants were limited to their answers. *See* Rule 12-210(C)(2) NMRA.

previously litigated unsuccessfully." *Silva v. State*, 1987-NMSC-107, ¶ 11, 106 N.M. 472, 745 P.2d 380. We review the trial court's determination on a question of collateral estoppel for an abuse of discretion. *See Shovelin*, 1993-NMSC-015, ¶ 10.

**{50}** The district court admitted the entirety of Judge Kase's findings and conclusions and OBA's proposed, but rejected, findings into evidence, and purported to give those findings preclusive effect. Indeed, the district court explicitly found that, because Judge Kase rejected proposed findings that the Behles firm had participated in forgery or fraud, Judge Kase necessarily determined that the Behles firm did not know the documents were forged when it relied on them at trial. The district court described this as "significant in determining that the Behles [firm] had probable cause to continue defense of its lien." The district court's interpretation of the rejected findings is dubious in light of the findings entered by the district court that, after learning that Phillips had not signed the critical documents, the Behles firm "continued to use and rely upon" the forged documents "knowing that they contained acknowledgement of their legal efficacy which were improper and/or forged." But, in any event, we also agree with the Behles firm that these findings were non-essential to the lien claim, given that the firms' knowledge had no bearing on the lien's validity. These, and the numerous non-essential factual findings in Judge Kase's fifty-page findings and conclusions should not have been given preclusive effect. *See Paulos v. Janetakos*, 1942-NMSC-057, ¶¶ 12-15, 46 N.M. 390, 129 P.2d 636. It was therefore an abuse of discretion for the district court to bar relitigation of these issues and to rely on them for its probable cause determination. Because there were hundreds of findings and conclusions, we will not list them individually, but the non-essential findings include those concerning the Behles firm's knowledge; the rejected findings regarding fraud or forgery, evidentiary findings, findings which amount to conclusions of law, and findings concerning other Defendants. Only the factual findings necessary to a determination on the lien claim are findings which may have preclusive effect. Though we reverse and remand in light of this error, we also address the analysis that should have been undertaken by the district court, as this issue is likely to arise on remand. *See State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 37, 136 N.M. 309, 98 P.3d 699 (addressing an issue likely to recur on remand in order to provide guidance to the district court).

**{51}** Whether an issue was "actually litigated" and "necessarily determined" in the prior lawsuit, such that it has preclusive effect, first requires comparison with the present lawsuit, and whether there is an identity of factual issue in the two cases. *See State ex rel. Peterson v. Aramark Corr. Servs., LLC*, 2014-NMCA-036, ¶ 34, 321 P.3d 128; *see Paulos*, 1942-NMSC-057, ¶¶ 1, 5, 9-16, 24 (holding that a prior finding concerning the plaintiff's failure to perform under an alleged contract with the decedent was a decisive fact in a suit seeking specific performance and binding on the plaintiff in his later suit for recovery for the value of services allegedly rendered to the decedent, but that other merely evidentiary findings were not decisive or preclusive). Moreover, if there is an identity of issue, that issue must be not merely relevant, but dispositive and necessary to the earlier judgment, and actually litigated. *Paulos*, 1942-NMSC-057, ¶¶ 13-14; *see also Brundage v. K.L. House Constr. Co.*, 1964-NMSC-243, ¶ 5, 74 N.M. 613, 396 P.2d 731 (holding that an ultimate and necessarily determined fact is one "upon which the

court's conclusion rests and without which . . . the judgment would lack support in an essential particular").

**{52}** Accordingly, here, to determine whether any of the factual issues in the lien litigation were dispositive and identical to a factual issue in the malicious abuse of process litigation, the district court should first have examined the elements of the lien claim. The Behles and Miller firms asserted their lien based on two theories: (1) the security agreement purportedly assigning half of Riverside's interest in the Molly Doolittle contract and (2) a transcript of judgment and related judgment lien. With respect to the first theory, the firms were required to show that the security agreement was a valid agreement and assignment, such that it rendered the Orilla del Rio property security for Green's debt to the firms. *See, e.g.*, 51 Am. Jur. 2d *Liens* § 40 (2020) (defining and discussing equitable liens). This theory also implicated the validity of the underlying August 22, 2002 contract. With respect to the second theory, a judgment lien is a "lien on the real estate of the judgment debtor from the date of the filing of the transcript of the judgment in the office of the county clerk of the county in which the real estate is situate." NMSA 1978, § 39-1-6 (1983). "[A] judgment lien can attach only to whatever interest the debtor has in the property. If he has no interest, then no lien can attach." *Romero v. State*, 1982-NMSC-028, ¶ 15, 97 N.M. 569, 642 P.2d 172 (citing 2 A.C. Freeman, *A Treatise of the Law of Judgments* § 950 (5th ed. 1925)). Thus, the Behles and Miller firms were required to show that they held a valid transcript of judgment and judgment lien against Green and/or Riverside, and that Green and/or Riverside had an interest in the Orilla del Rio property. Ultimate factual findings are those essential to Judge Kase's determination that the lien was invalid under both of these theories.

**{53}** The next step in the analysis is whether any of those ultimate factual findings are also essential to the malicious abuse of process claim. *See Peterson*, 2014-NMCA-036, ¶ 34. A malicious abuse of process claim, in the probable cause context, necessarily involves the merits of the claim in a prior proceeding. In order to establish malicious abuse of process, OBA was required to show (among other things) that the Behles firm lacked continued probable cause, or "a reasonable belief, founded on known facts established after a reasonable . . . investigation," that the Behles firm's lien claims could "be established to the satisfaction of a court or a jury." UJI 13-1639 (alteration omitted); *DeVaney*, 1998-NMSC-001, ¶ 22. Probable cause "is to be judged by facts as they appeared at the time, not by later-discovered facts." *Weststar Mortg. Corp.*, 2003-NMSC-002, ¶ 16 (internal quotation marks and citation omitted). Therefore, the mere termination of civil proceedings "adverse to the person initiating them is not evidence that they were brought without probable cause." Restatement (Second) of Torts § 675 cmt. b; *see Guest v. Berardinelli*, 2008-NMCA-144, ¶ 18, 145 N.M. 186, 195 P.3d 353 (noting that "the fact that [the d]efendants' claims were ultimately dismissed by the district court has no bearing on the question of whether [the d]efendants had probable cause to file suit").

**{54}** However, "dismissal can create an inference of lack of probable cause in some circumstances." *S. Farm Bureau Cas. Co. v. Hiner*, 2005-NMCA-104, ¶ 13, 138 N.M.

154, 117 P.3d 960 (citing *DeVaney*, 1998-NMSC-001, ¶ 23). Here, some of Judge Kase's findings of fact may be both dispositive of the determination that the lien was invalid and create an inference of lack of probable cause. For instance, Judge Kase found that Riverside's articles of incorporation were revoked before it purportedly transferred an interest to the Behles and Miller firms. There may be evidence that the Behles firm was aware of this fact when it chose to continue the litigation following the Phillips deposition. If so, the finding would be an essential fact in both proceedings. But OBA bears the burden of demonstrating the applicability of issue preclusion through proving what was known by the Behles firm at the relevant time with respect to that issue. *Silva*, 1987-NMSC-107, ¶ 12 (holding that "it is the burden of the movant invoking the doctrine of collateral estoppel to introduce sufficient evidence for the court to rule on whether the doctrine is applicable").

**{55}**     We also recognize that, where the underlying litigation did *not* terminate in favor of the party who later makes a claim of malicious abuse of process, that unfavorable termination is a complete defense because it "is conclusive evidence of the existence of probable cause." *DeVaney*, 1998-NMSC-001, ¶ 23 (citing Restatement (Second) of Torts § 675 cmt. b); *see also Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶ 28, 142 N.M. 150, 164 P.3d 31 (discussing that, where a counter-claim for malicious abuse of process based on lack of probable cause is brought in the underlying suit, the proceedings may be bifurcated, since "the jury's determination in the original plaintiff's favor on the underlying claims would trump any finding . . . of a lack of probable cause"). Thus, had Judge Kase found in favor of the Behles firm on the lien claim, that finding would furnish a complete defense to OBA's probable-cause-based malicious abuse of process claim. But Judge Kase found for OBA; therefore, the Behles firm is estopped from attempting to secure a complete defense through relitigating the validity of the lien claim. *See* Restatement (Second) of Torts § 674 cmt. e (stating that "the person who unsuccessfully initiates civil proceedings cannot relitigate the validity of his claim in an action brought for their wrongful initiation"). The Behles firm may only litigate the reasonableness of its investigation and *belief* that the lien was valid—it may not litigate whether the lien *was* valid because that potential defense was already decided against them. In addition, and as a necessary corollary, the lien's invalidity is to be considered by the district court and/or jury as an established procedural fact. We emphasize that whether any given factual issue should be given preclusive effect with respect to the elements of OBA's malicious abuse of process claim is, as set forth above, a separate matter.[10]

**{56}**     Finally, we agree with the Behles firm that Judge Kase's findings and conclusions should not have been admitted as an evidentiary exhibit. If any particular factual finding concerning the lien claim is determined to have preclusive effect, the fact-finder (whether the court, or the jury) should deem such finding to be established. A prior memorialization of that issue (e.g., in Judge Kase's written findings and conclusions) is

---

10 Because we reverse and remand on the collateral estoppel effect of the Sierra County findings, and we do not know whether any particular issue will be found to have preclusive effect under the correct analysis, we do not address Behles firm's arguments concerning its opportunity to fully and fairly litigate the pertinent issue(s) in the Sierra County proceeding.

not evidence as such. It is merely a document that contains a statement of the issue, and admitting the entire document as evidence suggests that the jury or fact-finder is to weigh it, in spite of the fact that the document itself is hearsay and, where the entire document is admitted, may be more prejudicial than probative. Rules 11-403, 11-801(C) NMRA. An issue that has collateral estoppel effect is not to be re-weighed, but is to be considered finally decided. With respect to the jury, precise jury instructions setting forth the established factual issue should be given, as necessary.

**{57}** In sum: (1) we reverse and remand for a new trial because the district court erroneously admitted in evidence and barred relitigation of non-essential findings (and non-essential rejected findings) from Judge Kase's findings and conclusions; (2) the preclusive effect of any findings essential to the lien determination should be analyzed under the framework set forth above; (3) the procedural fact of the lien's invalidity is to be considered established, and the Behles firm is barred from relitigating the lien's validity; and (4) if any particular factual issues are found to be preclusive, they should be deemed established, not admitted as an evidentiary exhibit.

## D. The Probable Cause Determination

**{58}** Because we reverse and remand on the issue of the preclusive effect of the Sierra County findings and conclusions, and because those findings were pivotal at trial, we do not address in great detail the parties' arguments with respect to probable cause. However, because we (again) anticipate that this issue is likely to arise on remand, we explain our agreement with Plaintiffs' general contention that the district court's probable cause determination lacked an adequate factual and legal basis.[11] We also explain our disagreement with Plaintiffs regarding the appropriate time-frame for the continued probable cause analysis.

**{59}** Continuing probable cause is defined as a reasonable ongoing investigation of a claim, *and* a reasonable belief, based on the facts known at the relevant time, that the claim could be established to the satisfaction of a court or jury. *See* UJI 13-1639; *DeVaney*, 1998-NMSC-001, ¶ 22; Restatement (Second) of Torts § 674 cmt. d. The existence of probable cause is a question for the district court. *See Weststar Mortg. Corp.*, 2003-NMSC-002, ¶ 17 (citing Restatement (Second) of Torts § 681B); UJI 13-1639 use note 3, comm. cmt. If factual issues relevant to the probable cause analysis are not in dispute, the court makes its determination, and further instructs the jury as necessary. *See Weststar Mortg. Corp.*, 2003-NMSC-002 ¶ 17; *S. Farm Bur. Cas. Co.*,

---

11 Plaintiffs also argue that the jury should have been permitted to consider evidence going to the Behles firm's allegedly improper motive, but improper motive is only relevant if the Behles firm lacked continued probable cause. If the Behles firm *had* continued probable cause, then OBA's claim is subject to dismissal, even if the Behles firm had an improper motive in the underlying litigation. *See DeVaney*, 1998-NMSC-001, ¶ 30 (citing Restatement (Second) of Torts Section 669A cmt. b, incorporated by reference in Section 675 comment j, which states that "it may not be inferred from evidence of an improper purpose alone that there was not probable cause"); *see also* UJI 13-1639 use note 3 (noting that a special verdict form should be used for the jury to decide any factual disputes relevant to the court's determination of probable cause, and that "[t]he verdict form should also guide the jury on whether and when it should go on to consider the defendant's motive").

2005-NMCA-104, ¶ 12 (stating that "if the extent of a [claimant's] knowledge in the underlying suit" at the relevant time, "is not in dispute, the issue becomes one of law"). However, if there are material disputes of fact relevant to the existence of probable cause, the jury must resolve them, preferably through special interrogatories. *See* UJI 13-1639 use note 3.[12]

**{60}**  In *Fleetwood Retail Corp. of New Mexico*, our Supreme Court admonished that "a court's analysis of probable cause should be undertaken in a manner that will likely have the least chilling effect on a litigant's access to the courts[,]" 2007-NMSC-047, ¶ 20, and that a lack of probable cause "must be manifest," *id.* ¶ 13 (internal quotation marks and citation omitted). Probable cause does not require certainty, and where the defendant is an attorney, he/she generally has reasonable latitude to assert novel claims, or those with a relatively slim chance of success, given the duty of an attorney to zealously advocate for his/her client. *See Guest*, 2008-NMCA-144, ¶¶ 13, 19-21; *see also* Restatement (Second) of Torts § 674 cmt. d. The question is whether an attorney's opinion that there was a sound chance that the claim might be sustained was a reasonable one. *See* Restatement (Second) of Torts § 675 cmt. f. Yet, if an attorney "acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose," that attorney "is subject to the same liability as any other person." Restatement (Second) of Torts § 674 cmt. d. Moreover, a person "cannot have a reasonable belief in the existence of the facts on which the proceedings are based if [she/]he knows that the alleged facts are not true." Restatement (Second) of Torts § 675 cmt. d.

**{61}**  Furthermore, where an attorney is representing his or her own interests in a proceeding, the reasonableness of the attorney's belief must be assessed in that light. Ordinarily, a defendant may only rely on the advice of his attorney as a defense to a probable-cause-based malicious abuse of process claim where the defendant has no reason to believe that his attorney has a personal interest in the outcome of the case. *Id.* cmt. h. In the unusual circumstances of this case—where the Behles firm represented itself to pursue its own claim, in addition to the Miller firm's claim, in the underlying litigation—we think the reasonableness inquiry must account for the interested quality of the Behles firm's decision-making in choosing to continue the litigation.

**{62}**  With this guidance in mind, we conclude that, although Behles testified regarding her belief that she had various avenues of proof for the lien claim, the district court failed to examine the factual or legal support for her theories, and thus was ill-equipped to make an objective assessment of whether that belief was reasonable. For example, while Behles testified that she believed the critical documents were legally valid because Phillips had later ratified Green's signature, she presented no evidence from

---

12 The district court's order stated that probable cause was a determination for the court, but later stated that there was no evidence from which a reasonable jury could find for OBA on the element of probable cause. We assume that the district court intended to say that, because the Behles firm had probable cause to continue its lien claim, there was no evidence from which a reasonable jury could find in favor of OBA on the malicious abuse of process claim (the probable cause element having been negated as a matter of law). *See* Rule 1-050.

which the reasonableness of that belief could be evaluated. Similarly, Behles cited *Miera*, 1919-NMSC-016, ¶ 10, for the proposition that Phillips could authorize Green to sign the critical documents without a power of attorney, but the exception recognized in *Miera* requires the presence of the authorizing person at the signing of a conveyance related to property. There was no evidence that Phillips was present for the signing of the security agreement or other documents. These issues of fact were material because if the Behles firm's theories had no basis in fact, those theories could not support a reasonable belief that the lien claim could be proved to the satisfaction of the court.

**{63}** Second, Behles cited various statutes and case law in support of her theories, but the district court did not analyze whether the law provides support for the theories advanced. For instance, although Behles claimed that Riverside could convey its assets, even if the corporation was dissolved the statutes cited by Behles, NMSA 1978, §§ 53-16-5, -6, -24 (1967), apply to a corporation which exists but intends to dissolve, and addresses legal rights and remedies after dissolution, whereas the issue in the underlying litigation was whether Riverside was legally capable of conveying any assets through the security agreement, when it seems that Riverside's articles of incorporation had been revoked, arguably rendering it legally non-existent, and unable to contract. *See* 19 Am. Jur. 2d *Corporations* § 2377 (2020) ("Forfeiture of the corporate charter destroys the corporation's existence as a legal entity, and after a charter is forfeited, the corporation has no right to conduct any further business."). Similarly, Behles claimed that she had an "independent" basis to proceed on the lien claim, in the form of the transcript of judgment—an argument the district court credited in its findings. But the evidentiary exhibits show that the judgment was based on the security agreement and disclaimer of interest that were later found to be forged and invalid. One case explicitly cited by Behles for the proposition that a judgment cannot be set aside, even if the evidence on which it was based was fraudulent, *See Day v. Trigg*, 1922-NMSC-012, ¶¶ 6-17, 27 N.M. 655, 204 P. 62, so held because the party attempting to invalidate the judgment participated in the litigation that produced the judgment; therefore, that party could have raised the issue in the first proceeding. Here, OBA was not a party to the proceeding through which the Behles firm obtained the judgment and transcript of judgment. A closer examination of these issues was required in order for the district court to determine the reasonableness of the Behles firm's belief that it could prove the lien claim to the satisfaction of a court or jury. We also agree with Plaintiffs that Judge Kase's brief order denying summary judgment due to disputes of fact should not have been given weight in the probable cause analysis, particularly given that both Baker and Behles testified that they sought further discovery during the summary judgment hearing, when Green had not yet been deposed, and trial was scheduled for the next month.

**{64}** However, we disagree with Plaintiffs that the district court should have considered whether, *after* the trial before Judge Kase, the Behles firm lacked probable cause to appeal and file post-judgment motions. Probable cause involves an inquiry into the reasonableness of a belief that a claim can be proved to the satisfaction of the fact-finder. Plaintiffs were free to argue and present proof in support of their claim that the Behles firm did not have continued probable cause to take the lien claim to trial. But

once a fact-finder passed on the validity of the lien claim, the reasonableness of the Behles firm's belief became irrelevant. The claim was decided. Rather, an unsuccessful appeal or unsuccessful post-judgment motion practice may be relevant to the malicious abuse of process claimant's damages.

## IV.   The District Court's Award of Costs to the Behles Firm Is Reversed

**{65}**   Plaintiffs also seek reversal of the district court's order granting the Behles firm its costs. Because we reverse and remand on the malicious abuse of process claim, for all the reasons set forth above, we grant Plaintiffs' request to reverse on the issue of costs, pending a final adjudication on remand. Rule 1-054(D) NMRA.

## CONCLUSION

**{66}**   We affirm the district court's dismissal of O'Brien. With respect to OBA, we reverse and remand for further proceedings in accordance with this opinion.

**{67}   IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**BRIANA H. ZAMORA, Judge**